Taras Kick, CA Bar No. 143379
Taras@kicklawfirm.com
Jeffrey C. Bils, CA Bar No. 301629
Jeff@kicklawfirm.com
**THE KICK LAW FIRM, APC**
815 Moraga Drive
Los Angeles, California 90049
Telephone:   (310) 395-2988
Facsimile:    (310) 395-2088

JEFFREY D. KALIEL, CA Bar No. 238293
Email:  jkaliel@kalielpllc.com
SOPHIA GOREN GOLD, CA Bar No. 307971
Email:  sgold@kalielpllc.com
**KALIEL GOLD PLLC**
1100 15th Street NW, 4th Floor
Washington, DC  20005
Tel: (202) 350-4783

*Attorneys for Plaintiff and the Class*

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION

| | |
|---|---|
| PANGNHIA VUE, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>PENTAGON FEDERAL CREDIT UNION, and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No. _____<br><br>**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT

Plaintiff Pangnhia Vue, on behalf of herself and all persons similarly situated brings this class action complaint against Pentagon Federal Credit Union ("PenFed," PCU" or "Credit Union"), and alleges the following:

/ / /

/ / /

1

**INTRODUCTION**

1.      When consumers open an account with their credit union, they have to enter into a standard contract written by the credit union and its lawyers. All the credit union has to do is honor the contract it wrote and comply with the terms it dictated.

2.      PCU promises its customers that if their account balance drops too low to cover a particular item such as a check, debit, or electronic bill payment, PCU will charge the customer a single $30 insufficient funds fee ("NSF Fee") per item. But as Ms. Vue and consumers all over the country have discovered, PCU does not abide by this promise. Instead, PCU routinely charges its customers multiple NSF Fees for the same item, driving their account balances deeper into negative territory.

3.      PCU's customers have been injured by the Credit Union's improper practices to the tune of millions of dollars bilked from their accounts in violation PCU's clear contractual commitments.

4.      Ms. Vue, on behalf of herself and two Class of similarly situated consumers, seeks to end PCU's abusive and predatory practices and force it to refund all of these improper charges. She asserts claims for breach of contract; breach of the covenant of good faith and fair dealing; and a violation of state consumer protection law; and/or unjust enrichment, and seeks damages, restitution, and injunctive relief, as set forth more fully below.

**PARTIES**

5.      Pangnhia Vue is a citizen of the State of California and holds a PCU account.

6.      Defendant Pentagon Federal Credit Union is engaged in the business of providing retail banking services to consumers, including Plaintiff and members of the putative Class. PCU has its headquarters and its principal place of business in Alexandria, Virginia, and is a citizen of the Commonwealth of Virginia.  It has more than $19 billion in assets.

**VENUE AND JURISDICTION**

7.      This Court has jurisdiction over the subject matter of this action, among other reasons,  pursuant to 28 U.S.C. § 1332(d)(2), because the matter in controversy exceeds $5,000,000, exclusive of interest and costs, and is a class action in which at least one member of

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

the class is a citizen of a different State than Defendant. The number of members of the proposed Class in aggregate exceeds 100. 28 U.S.C. § 1332(d)(5)(B).

8.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and/or omissions giving rise to the Plaintiff's claims occurred in this District.

## FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

### I.      PCU CHARGES MORE THAN ONE NSF FEE ON THE SAME ITEM

9.      PCU's Membership Disclosures ("Deposit Agreement") and Fee Schedule (collectively "Account Documents") allow it to charge a *single* $30 NSF Fee or a *single* $30 OD Fee when an item is returned for insufficient funds or paid despite insufficient funds.

10.      PCU breaches its contract by charging more than one $30 NSF Fee on the same item, since the contract explicitly states—and reasonable consumers understand—that the same item can only incur a single NSF or OD Fee.

11.      PCU's abusive practices are not standard within the financial services industry. Indeed, major banks like JP Morgan Chase—the largest consumer bank in the country—charge one NSF Fee per item, even if that item is resubmitted for payment multiple times. And while some other banks engage in the same practices as PCU, they clearly disclose those charges in the deposit agreements with their customers.

12.      PCU's Deposit Agreement does not say that PCU repeatedly charges customers multiple NSF fees on a single item. To the contrary, the Deposit Agreement indicates it will only charge a single NSF Fee or OD Fee on an item.

### A.  Plaintiff's Experience.

13.      In support of her claims, Plaintiff offers examples of fees that should not have been assessed against her account. As alleged below, PCU: (a) reprocessed previously declined items; and (b) charged an additional fee upon reprocessing, for a total assessment of *$60 in fees on each item*.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

14.     On May 6, 2021, Plaintiff attempted a payment via ACH.  PCU rejected payment of that item due to insufficient funds in Plaintiff's account and charged her a $30 NSF Fee for doing so. Plaintiff does not dispute this initial fee, as it is allowed by PCU's Deposit Agreement.

15.     Unbeknownst to Plaintiff, and without her request to PCU to reprocess the item, however, six days later on May 12, 2021, PCU processed the same item yet again, with PCU labeling the transaction a RETRY PYMT on her statements. Again, PCU returned the item unpaid and charged Plaintiff *another* $30 NSF Fee for doing so.

16.     In sum, PCU assessed Plaintiff $60 in fees in its effort to process a single payment.

17.     Plaintiff understood the payment to be a single item as is laid out in PCU's contract, capable at most of receiving a single NSF Fee (if PCU returned it) or a single OD Fee (if PCU paid it).

18.     The same fact pattern occurred on May 7 and May 13, 2021. Plaintiff believes this also occurred on other occasions, but discovery will be necessary of all of Plaintiff's account statements.

**B. The Imposition of Multiple NSF Fees on a Single Item Violates PCU's Express Promises and Representations**

19.     PCU's Account Documents state that the Credit Union will assess a single fee of $30 for an item that is returned due to insufficient funds.

20.     According to the Fee Schedule, at most a *single* fee will be assessed when an item is returned or paid into overdraft:

Returned ACH (Originated at another financial institution), Check, or Preauthorized Debit

• Non-sufficient Funds....................................................... 30.00

Fee Schedule, Ex. A (emphasis added).

21.     This promise is further defined in the Deposit Agreement when PCU promises to only assess one fee per "item."

> **A fee will be assessed for non-sufficient funds** or uncollected funds (deposits on hold); refer to the Service Fees available at PenFed.org for the amount of this fee. **This fee applies to withdrawals by means of a check, ACH debit, or an electronic debit. This fee will be assessed should we decline to pay the item or pay the item, creating a negative balance on my account.** PenFed in its sole discretion will decide whether to pay an item thus creating a negative balance on my account. My account may be subject to other fees and charges. Service Fees are available online at PenFed.org or by telephone at 800-247-5626.
>
> . . .
>
> **At PenFed's sole discretion, each check or debit item will either be paid**, thereby bringing my account to a negative status, **or the item will be returned unpaid.** My account will be subject to the normal non-sufficient funds and returned-item charges then in effect.

Deposit Agreement, Ex. B, at 5, 23 (emphasis added).

22.     The same check, automatic bill payment, or other electronic payment on an account is not a new "item" each time it is rejected for payment then reprocessed, especially when—as here—Plaintiff took no action to resubmit the item.

23.     Even if PCU reprocesses an instruction for payment, it is still the same item. The Credit Union's reprocessing is simply another attempt to effectuate an accountholder's original order or instruction.

24.     Further, the Deposit Agreement goes on to specifically discuss the type of transaction that Plaintiff undertook: a pre-authorized transfer. With respect to pre-authorized transfers, the Deposit Agreement promises:

> **PREAUTHORIZED TRANSFERS. Your account will be charged a fee for each pre-authorized withdrawal which is not paid because of nonsufficient funds** or a fee for each pre-authorized withdrawal not paid because of uncollected funds.

Ex. B. at 13 (emphasis added).

25.     As alleged herein, Plaintiff took only a single action to make a single transfer; she therefore created may be charged only a single fee.

26.     In sum, PCU promises that one $30 NSF Fee or one $30 OD Fee will be assessed per item, and this must mean all iterations of the same instruction for payment. As such, PCU breached the contract when it charged more than one fee per item.

27.     A reasonable consumer would understand that PCU's Account Documents permit it to assess an NSF Fee only once per item.

28.     Taken together, the representations and omissions identified above convey to customers that all submissions for payment of the same transaction will be treated as the same "item," which the Credit Union will either pay (resulting in an overdraft item) or return (resulting in a returned item) when it decides there are insufficient funds in the account. Nowhere does PCU disclose that it will treat each reprocessing of a check or ACH payment as a separate item, subject to additional fees, nor do PCU customers ever agree to such fees.

29.     Customers reasonably understand, based on the language of the Account Documents, that the Credit Union's reprocessing of checks or ACH payments are simply additional attempts to complete the original order or instruction for payment, and as such, will not trigger additional NSF Fees. In other words, it is always the same item.

30.     For example, Central Pacific Bank, a leading bank in Hawai'i, states in its Fee Schedule under the "MULTIPLE NSF FEES" subsection:

> "Items and transactions (such as, for example, checks and electronic transactions/payments) returned unpaid due to insufficient/non-sufficient ("NSF") funds in your account, **may be resubmitted one or more times for payment, and a $32 fee will be imposed on you each time an item and transaction resubmitted for payment is returned due to insufficient/nonsufficient funds**." https://www.cpb.bank/media/2776/fee-001.pdf. (last visited April 27, 2021).

31.     For further example, Klein Bank, which prior to its acquisition in 2019 by Old National Bank, engaged in the same abusive practices as Defendant, stated as follows in its banking agreement:

> [W]e will charge you an NSF/Overdraft Fee each time: (1) a Bill Payment (electronic or check) is submitted to us for payment from your Bill Payment Account when, at the time of posting, your Bill Payment Account is overdrawn, would be overdrawn if we paid the item (whether or not we in fact pay it) or does not have sufficient available funds; or (2) we return, reverse, or decline to pay an item for any other reason authorized by the terms

and conditions governing your Bill Payment Account. **We will charge an NSF/Overdraft Fee as provided in this section regardless of the number of times an item is submitted or resubmitted to us for payment, and regardless of whether we pay the item or return, reverse, or decline to pay the bill payment.**

*Consumer and Small Business Online Access Agreement*, Klein Bank ¶ H, https://www.klein bankonline.com/bridge/disclosures/ib/disclose.html (last  accessed September 25, 2019 and March 17, 2020) (emphasis added).

32.     Air Academy Federal Credit Union contracts for its NSF fee as:

"$32.00 **per presentment**."

*See*, https://www.aafcu.com/fees.html (emphasis added) (last visited on or about April 23, 2021).

33.     Community Bank, N.A. unambiguously contracts on this issue:

**You may be charged more than one Overdraft or NSF Fee if a merchant submits a single transaction multiple times after it has been rejected or returned.**

*See,* https://cbna.com/u/header/2019-Overdraft-and-Unavailable-Funds-Practices-Disclosure-FINAL-1.14.2020.pdf (emphasis added) (last visited on or about April 23, 2021).

34.     Delta Community Credit Union contracts unambiguously as follows:

"$35 **per presentment**."

*See,* https://www.deltacommunitycu.com/home/fees.aspx (emphasis added) (last visited on or about April 23, 2021).  Further, in its Account Contract, Delta unambiguously states as follows

The Bank reserves the right to charge you an overdraft/insufficient funds fee if you write a check or initiate an electronic transaction that, if posted, would overdraw your Checking Account.  **Note that you may be charged an NSF fee each time a check or ACH is presented to us, even if it was previously submitted and rejected.**

*See,* https://www.deltacommunitycu.com/home/forms/member-savings-services-disclosures-and-agreements.aspx (emphasis added) (last visited on or about April 23, 2021).

35.     USE Credit Union contracts as follows:

"Overdraft/Non-sufficient Funds (NSF): Applies to checks, Bill Pay, ACH, ATM/POS and other electronic debits that are paid or returned. **Fees are charged per presentment, meaning the same item is subject to multiple fees if presented for payment multiple times**."

https://www.usecu.org/files/Schedule_of_Fees.pdf (emphasis added) (last visited April 26, 2021)

36.     First Financial Bank contracts unambiguously:

> Merchants or payees may present an item multiple times for payment if the initial or subsequent presentment is rejected due to insufficient funds or other reason (representment). **Each presentment is considered an item and will be charged accordingly**."

*See,* https://www.bankatfirst.com/content/dam/bankatfirst/legal/special-handling-charges.pdf (emphasis added) (last visited on or about April 27, 2021).

37.     First Hawaiian Bank unambiguously contracted in 2020 as follows:

> You agree that **multiple attempts may be made to submit a returned item for payment and that multiple fees may be charged to you as a result of a returned item and resubmission**.

*See,* https://www.fhb.com/en/assets/File/Home_Banking/FHB_Online/Terms_and_Conditions_of_FHB_Online_Services_RXP1.pdf (emphasis added) (last visited on or about March 17, 2020).

38.     First Northern Credit Union unambiguously contracts its NSF in its Fee Schedule as follows:

> "$29.00 **per each presentment and any subsequent representment(s)**." *See,*
>
> https://www.fncu.org/feeschedule/?scpage=1&scupdated=1&scorder=-click_count
>
> (emphasis added) (last visited on or about April 23, 2021).

39.     Further, First Northern in its Account Contract, unambiguously contracted its NSF Fee as of 2020 as follows:

> You further agree that **we may charge a NSF fee each time an item is presented for payment even if the same item is presented for payment multiple times**.  For example, if you wrote a check to a merchant who submitted the payment to us and we returned the item (resulting in a NSF fee), the merchant may re-present the check for payment again.  If the second and any subsequent presentments are returned unpaid, **we may charge a NSF fee for each time we return the item.  You understand this means you could be charged multiple NSF fees for one check** that you wrote as that check could be presented and returned more than once. **Similarly**, if you authorize a merchant (or other individual or entity) to electronically debit your account, such as an ACH debit, **you understand there could be multiple submissions of the electronic debit request which could result in multiple NSF fees**

*See,* (https://www.fncu.org/SecureAsset.aspx?Path=/7/Member_Agreement_November_1_2019.pdf) (emphasis added) [last visited on or about March 17, 2020].

40.    Glendale Federal Credit Union unambiguously contracts its NSF fee as,

"$30 **per presentment**."

*See,* https://www.glendalefcu.org/_/kcms-doc/2001/58294/Fee-Schedule.pdf.  (emphasis added)

(last visited on or about April 26, 2021).

41.    Liberty Financial contracts its NSF fee unambiguously as:

"$27.00 **per presentment**."

*See,* https://liberty.financial/about/fee-schedule/  (emphasis added) (last visited on or about April 23, 2021).

42.    Members First Credit Union contracts unambiguously:

We reserve the right to charge an Non-Sufficient Funds Fee (NSF Fee) each time a transaction is presented if your account does not have sufficient funds to cover the transaction at the time of presentment and we decline the transaction for that reason. **This means that a transaction may incur more than one Non-Sufficient Funds Fee (NSF Fee) if it is presented more than once…we reserve the right to charge a Non-Sufficient Funds (NSF Fee) for both the original presentment and the representment** [.]

*See,* http://www.membersfirstfl.org/files/mfcufl/1/file/Membership_and_Account_Agreement.pdf (emphasis added) (last visited on or about April 23, 2021).

43.    Meriwest Credit Union unambiguously contracts its fee as:

"$35.00/item **per presentment**".

https://www.meriwest.com/sites/www.meriwest.com/files/media/consumer_feesched.pdf

(emphasis added) (last visited on or about April 23, 2021).

44.    Partners 1st Federal Credit Union contracts unambiguously:

Consequently, because **we may charge a fee for an NSF item each time it is presented, we may charge you more than one fee for any given item. Therefore, multiple fees may be charged to you as a result of a returned item and resubmission regardless of the number of times an item is submitted or resubmitted to us for payment, and regardless of whether we pay the item or return, reverse, or decline to pay the item**.

*See,* https://s3.us-east-1.amazonaws.com/assets.partners1stcu.org/uploads/PDFs/Consumer_Account_Agreement.pdf

(emphasis added) (last visited on or about April 23, 2021)

45.    RBC Bank unambiguously contracts:

> "We may also charge against the Account an NSF fee for each item returned or rejected, **including for multiple returns or rejections of the same item**."

*See,* https://www.rbcbank.com/siteassets/Uploads/pdfs/Service-Agreement-for-Personal-Accounts.pdf (emphasis added) (last visited on or about April 23, 2021).

46.    Regions Bank contracts unambiguously:

> If an item is presented for payment on your account at a time when there is an insufficient balance of available funds in your account to pay the item in full, you agree to pay us our charge for items drawn against insufficient or unavailable funds, whether or not we pay the item. **If any item is presented again after having previously been returned unpaid by us, you agree to pay this charge for each time the item is presented for payment and the balance of available funds in your account is insufficient to pay the item**.

*See,* https://www.regions.com/virtualdocuments/Deposit_Agreement_6_1_2018.pdf (emphasis added) (last visited on or about April 23, 2021).

47.    Tyndall Credit Union Bank contracts its NSF fee as:

> "$20.00 **per presentment** (maximum 5 per day)."

*See,* https://tyndall.org/member_center/document_center/fee_schedule (emphasis added) (last visited on or about April 23, 2021).

48.    PCU provides no such disclosure, and in so doing, breaches its contracts with accountholders, engages in bad faith conduct, and deceives its accountholders.

**C. The Imposition of Multiple NSF Fees on a Single Item Breaches PCU's Duty of Good Faith and Fair Dealing.**

49.    Parties to a contract are required not only to adhere to the express conditions in the contract, but also to act in good faith when they are vested with a discretionary power over the other party. In such circumstances, the party with discretion is required to exercise that power and discretion in good faith. This creates an implied promise to act in accordance with the parties' reasonable expectations and means that the Credit Union is prohibited from exercising its discretion to enrich itself and gouge its customers. Indeed, the Credit Union has a duty to honor transaction

requests in a way that is fair to Plaintiff and its other customers and is prohibited from exercising its discretion to pile on ever greater penalties. Here—in the adhesion agreements PCU foisted on Plaintiff and its other customers—PCU has provided itself numerous discretionary powers affecting customers' bank accounts. But instead of exercising that discretion in good faith and consistent with consumers' reasonable expectations, the Credit Union abuses that discretion to take money out of consumers' accounts without their permission and contrary to their reasonable expectations that they will not be charged multiple fees for the same transaction.

50.    PCU exercises its discretion in its own favor—and to the prejudice of Plaintiff and its other customers—when it defines "item" in a way that directly leads to more NSF Fees. Further, PCU abuses the power it has over customers and their bank accounts and acts contrary to their reasonable expectations under the Account Documents. This is a breach of the Credit Union's implied covenant to engage in fair dealing and act in good faith.

51.    By exercising its discretion in its own favor—and to the prejudice of Plaintiff and other customers—by charging more than one NSF Fee on a single item, PCU breaches the reasonable expectation of Plaintiff and other customers and in doing so violates the implied covenant to act in good faith.

52.    It was bad faith and totally outside Plaintiff's reasonable expectations for PCU to use its discretion to assess two or three NSF Fees for a single attempted payment.

**D.    The Imposition of Multiple Fees on a Single Item Is Deceptive and Violative of California Consumer Protection Law.**

53.    In marketing and promotions, PCU describes itself as a consumer-friendly, low-fee credit union.

54.    Amidst a slew of banks and credit unions all competing for consumers' business, PCU advertises its accounts as an attractive alternative to accounts at larger, more impersonal banks, which may involve numerous hidden fees.

55.    On its website, PCU promises: "Money in, money out. When it comes to routine banking, you need a checking account that offers the ease of use you need without sucking you dry

with added fees. A good checking account is designed to handle all the financial tasks you need on a routine basis." *See* https://www.penfed.org/learn/what-to-expect-from-your-checking-account.

56.    PCU further promises, "Keeping your checking account at a credit union helps you make the most of even this basic financial resource. 'As a credit union CEO, my mission is to pay the most I can on deposits and charge the least on our loans to our member owners,' said PenFed Credit Union President and CEO James Schenck. 'Credit unions exist to maximize value to their members, not a group of profit-seeking investors.'" See https://www.penfed.org/learn/what-to-expect-from-your-checking-account

57.    PCU specifically advertises its Access America checking accounts as an "account that earns you more." *See* https://www.penfed.org/accounts/access-america-checking

58.    But PCU never discloses that it uses secret, fee-maximizing policies designed to strip its members of their hard-earned funds. PCU fails to inform consumers that, unlike other banks (like Chase), it will assess multiple insufficient funds fees on the same item, each and every time it is re-processed.

59.    Had Plaintiff known about PCU's true fee practices, she would not have chosen to bank with PCU.

**CLASS ACTION ALLEGATIONS**

60.    Plaintiff brings this case, and each of Plaintiff's respective causes of action, as a class action pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and (b)(3) on behalf of the following class:

> All persons who, within the applicable statute of limitations period, were charged more than one NSF Fees for the same item in a PCU account.

61.    Excluded from the Class are: (1) any entity in which Defendant has a controlling interest; (2) officers or directors of Defendant; (3) this Court and any of its employees assigned to work on the case; and (4) all employees of the law firms representing Plaintiff and the Class Members.

62.    Plaintiff reserves the right to modify or amend the definition of the proposed Class and/or to add a Subclass(es) if necessary before this Court determines whether certification is appropriate.

63.    This action has been brought and may be properly maintained on behalf of each member of the Class under Federal Rule of Civil Procedure 23.

64.    **Numerosity of the Class (Federal Rule of Civil Procedure 23(a)(1))** – The parties are numerous such that joinder is impracticable. Upon information and belief, and subject to class discovery, the Class consist of thousands of members or more, the identities of whom are within the exclusive knowledge of and can be ascertained only by resort to PCU's records. PCU has the administrative capability through its computer systems and other records to identify all members of the Class, and such specific information is not otherwise available to Plaintiff.

65.    It is impracticable to bring Class Members' individual claims before the Court. Class treatment permits a large number of similarly situated persons or entities to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of evidence, effort, expense, or the possibility of inconsistent or contradictory judgments that numerous individual actions would engender. The benefits of the class mechanism, including providing injured persons or entities with a method for obtaining redress on claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in the management of this class action.

66.    Upon information and belief, Defendant has databases, and/or other documentation, of its customers' transactions and account enrollment, including electronically stored information. These databases and/or documents can be analyzed by an expert to ascertain which of Defendant's account holders has been harmed by its practices and thus qualifies as a Class Member. Further, the Class definition identifies groups of unnamed plaintiffs by describing a set of common characteristics sufficient to allow a member of that group to identify herself or herself as having a right to recover. Other than by direct notice through mail or email, alternative proper and sufficient notice of this action may be provided to the Class Members through notice published in newspapers or other publications.

67.    **Commonality (Federal Rules of Civil Procedure, Rule 23(a)(2))** – The questions here are ones of common or general interest such that there is a well-defined community of interest among the members of the Class. The legal elements of a breach of contract claim and an unjust enrichment claim are substantially similar in all states from which inclusion of class members will be sought, or sub-classes may be created, such that certification will be appropriate.  Further, in its Account Agreement, which is attached as Exhibit B, on information and belief, Defendant contends that uniform laws should be applied to class members regardless of the state of their citizenship, including the NACHA regulations which apply to all class members regardless of their state of citizenship.  These questions predominate over questions that may affect only individual Class members because PCU has acted on grounds generally applicable to the Class. Such common legal or factual questions include, but are not limited to:

    a.    Whether PCU improperly charged NSF Fees;

    b.    Whether any of the conduct enumerated above violates the contract;

    c.    Whether any of the conduct enumerated above violates the covenant of good faith and fair dealing;

    d.    Whether any of the conduct enumerated above constitutes unjust enrichment; and

    e.    The appropriate measure of damages.

68.    **Typicality (Federal Rules of Civil Procedure, Rule 23(a)(3))** – Plaintiff's claims are typical of all of the Class Members' claims.  The evidence and the legal theories regarding Defendant's alleged wrongful conduct committed against Plaintiff and all of the Class Members are substantially the same because all of the relevant agreements between Defendant and its customers, including the Fee Schedule and the Deposit Account Agreement, were identical as to all relevant terms, and also because, *inter alia*, the challenged practices of charging customers for improper fees are uniform for Plaintiff and all Class Members. Accordingly, in pursuing its own self-interest in litigating these claims, Plaintiff will also serve the interests of the other Class Members.

69.    **Adequacy (Federal Rules of Civil Procedure, Rule 23(a)(4))** – Plaintiff is more

1    than an adequate representatives of the Class in that they had a PCU account and suffered

2    damages as a result of Defendant's improper business practices. In addition: Plaintiff is

3    committed to the vigorous prosecution of this action on behalf of themselves and all others

4    similarly situated and have retained competent counsel experienced in the prosecution of class

5    actions and, in particular, class actions on behalf of consumers against financial institutions; there

6    is no conflict of interest between Plaintiff and the unnamed Class Members; they anticipate no

7    difficulty in the management of this litigation as a class action; and, Plaintiff's legal counsel has

8    the financial and legal resources to meet the substantial costs and legal issues associated with this

9    type of litigation.

10        70.    **Predominance and Superiority (Federal Rules of Civil Procedure, Rule**

11   **23(b)(3))** – The matter is properly maintained as a class action under Rule 23(b)(3) because the

12   common questions of law or fact identified herein and to be identified through discovery

13   predominate over questions that may affect only individual Class Members. Further, the class action

14   is superior to all other available methods for the fair and efficient adjudication of this matter.

15   Because the injuries suffered by the individual Class Members are relatively small, the expense and

16   burden of individual litigation would make it virtually impossible for Plaintiff and Class Members to

17   individually seek redress for Defendant's wrongful conduct. Even if any individual person or

18   group(s) of Class Members could afford individual litigation, it would be unduly burdensome to the

19   courts in which the individual litigation would proceed. The class action device is preferable to

20   individual litigation because it provides the benefits of unitary adjudication, economies of scale, and

21   comprehensive adjudication by a single court. In contrast, the prosecution of separate actions by

22   individual Class Members would create a risk of inconsistent or varying adjudications with respect to

23   individual Class Members that would establish incompatible standards of conduct for the party (or

24   parties) opposing the Class and would lead to repetitious trials of the numerous common questions of

25   fact and law. Plaintiff knows of no difficulty that will be encountered in the management of this

26   litigation that would preclude its maintenance as a class action. As a result, a class action is superior

27   to other available methods for the fair and efficient adjudication of this controversy. Absent a class

28   action, Plaintiff and the Class Members will continue to suffer losses, thereby allowing Defendant's

1    violations of law to proceed without remedy and allowing Defendant to retain the proceeds of their

2    ill-gotten gains.

3        71.    This particular forum is desirable for this litigation because Plaintiff resides in this

4    District, and the claims arose from activities which occurred in this District. Plaintiff does not foresee

5    significant difficulties in managing the class action in that the major issues in dispute are susceptible to

6    class proof.

7        72.    Plaintiff anticipates the issuance of notice, setting forth the subject and nature of the instant

8    action, to the proposed Class Members. Upon information and belief, Defendant's own business records

9    and/or electronic media can be utilized for the contemplated notices. To the extent that any further notices

10   may be required, Plaintiff anticipates using additional media and/or mailings.

11       73.    This matter is properly maintained as a class action pursuant to Rule 23(b) of the

12   Federal Rules of Civil Procedure, in that:

13           a.    Without class certification and determination of declaratory, injunctive,

14       statutory and other legal questions within the Class format, prosecution of separate

15       actions by individual members of the Class will create the risk of:

16               1.    Inconsistent or varying adjudications with respect to individual

17           members of the Class which would establish incompatible standards of conduct

18           for the parties opposing the Class; or

19               2.    Adjudication with respect to individual members of the Class,

20           which would as a practical matter be dispositive of the interests of the other

21           members not parties to the adjudication or substantially impair or impede their

22           ability to protect their interests. The parties opposing the Class have acted or

23           refused to act on grounds generally applicable to each member of the Class,

24           thereby making appropriate final injunctive or corresponding declaratory relief

25           with respect to the Class as a whole.

26           b.    Common questions of law and fact exist as to the members of the Class

27       and predominate over any questions affecting only individual members, and a class

28

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

action is superior to other available methods of the fair and efficient adjudication of the controversy, including consideration of:

> 1.    The interests of the members of the Class in individually controlling the prosecution or defense of separate actions;
>
> 2.    The extent and nature of any litigation concerning controversy already commenced by or against members of the Class;
>
> 3.    The desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> 4.    The difficulties likely to be encountered in the management of a class action.

74.    All conditions precedent to bringing this action have been satisfied and/or waived.

## CAUSES OF ACTION

### COUNT I
### BREACH OF CONTRACT
### (On Behalf of Plaintiff and the Class)

75.    Plaintiff repeats, realleges, and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

76.    Plaintiff and PCU contracted for account services, as embodied in the relevant account documents.

77.    Defendant mischaracterized in the Account Documents its true NSF Fee practices and breached the express terms of the Account Documents.

78.    No contract provision authorizes Defendant to charge more than one NSF Fee on the same item.

79.    Defendant has breached its contracts with Plaintiff and the Class through its NSF fee policies and practices as alleged herein.

80.    Plaintiff and members of the putative Class have performed all of the obligations on them pursuant to the Credit Union's agreements.

81.    Plaintiff and members of the putative Class have sustained monetary damages as a result of each of Defendant's breaches.

**COUNT II**
**BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING**
**(On Behalf of Plaintiff and the Class)**

82.    Plaintiff repeats, realleges, and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

83.    Plaintiff and PCU contracted for account services, as embodied in the Deposit Agreement and Fee Schedule.

84.    Under California law and the states wherein PCU does business, a covenant of good faith and fair dealing is implied in every contract. The covenant of good faith and fair dealing constrains Defendant's discretion to abuse self-granted contractual powers.

85.    This good faith requirement extends to the manner in which a party employs discretion conferred by a contract.

86.    Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—not merely the letter—of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form. Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

87.    Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes her conduct to be justified. A lack of good faith may be overt or may consist of inaction, and fair dealing may require more than honesty. Other examples of violations of good faith and fair dealing are willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

88.    PCU breached the covenant of good faith and fair dealing through its NSF fee policies and practices as explained herein.

89.    Each of Defendant's actions was done in bad faith and was arbitrary and capricious.

90.     Plaintiff and members of the putative Class have performed all of the obligations imposed on them pursuant to the Deposit Agreement.

91.     Plaintiff and members of the putative Class have sustained monetary damages as a result of each of Defendant's breaches of the covenant of good faith and fair dealing.

### COUNT III
### UNJUST ENRICHMENT
### (In the Alternative to COUNT I and COUNT II)
### (On Behalf of Plaintiff and the Class)

92.     Plaintiff repeats, realleges, and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

93.     This Count is brought solely in the alternative to Plaintiff's breach of contract and breach of the covenant of good faith and fair dealing claims. Plaintiff acknowledges that her breach of contract claim cannot be tried along with unjust enrichment.

94.     To the detriment of Plaintiff and the Class, Defendant has been, and continues to be, unjustly enriched as a result of its wrongful conduct alleged herein.

95.     Plaintiff and the Class conferred a benefit on Defendant when they paid Defendant the fees that were not disclosed or allowed for in the in the Account Documents.

96.     Defendant unfairly, deceptively, unjustly, and/or unlawfully accepted said benefits, which under the circumstances, would be unjust to allow Defendant to retain.

97.     Defendant's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

98.     Plaintiff and the Class, therefore, seek disgorgement of all wrongfully obtained fees received by Defendant as a result of its inequitable conduct as more fully stated herein.

### COUNT IV
### Money Had and Received
### (On Behalf of the Plaintiff and the Class)

99.     The preceding allegations are incorporated by reference and re-alleged as if fully set forth herein.

100.     Defendant has obtained money from Plaintiff and the class members by the exercise of undue influence, menace or threat, compulsion or duress, and/or mistake of law and/or fact.

101.    As a result, Defendant has in its possession money which, in equity, belongs to Plaintiff and the class members, and thus, this money should be refunded to Plaintiff and the class members. Therefore, Plaintiff and the class members seek relief as set forth in the Prayer below.

## COUNT V

**(Violation of the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*)**

102.    The preceding allegations are incorporated by reference and re-alleged as if fully set forth herein.

103.    Defendant's conduct described herein violates the Unfair Competition Law (the "UCL"), codified at California Business and Professions Code section 17200, *et seq.*

104.    The UCL prohibits, and provides civil remedies for, unfair competition. Its purpose is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services. In service of that purpose, the Legislature framed the UCL's substantive provisions in broad, sweeping language.

105.    By defining unfair competition to include any "any unlawful, unfair or fraudulent business act or practice," the UCL permits violations of other laws to be treated as unfair competition that is independently actionable, and sweeps within its scope acts and practices not specifically proscribed by any other law.

106.    Defendant's conduct violates the UCL by charging more than one NSF fee, or an NSF Fee followed by an overdraft fee, on the same item.

107.    Defendants committed fraudulent business acts and practices in violation of Cal. Bus. & Prof. Code § 17200, *et seq.*, and unlawful in violation of California Civil Code §3300, §3302, and §§ 1750 *et. seq.*, in the following respect, among others: by charging multiple NSF Fees on a single item, or an NSF Fee followed by an Overdraft Fee, thereby charging fees that were not contracted in either the Account Agreement or Fee Schedule. Defendant's conduct was not motivated by any legitimate business or economic need or rationale. The harm and adverse impact of Defendant's conduct on members of the general public was neither outweighed nor justified by any legitimate reasons, justifications, or motives. The harm to Plaintiff and Class Members arising

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

from Defendant's unfair and deceptive practices relating to the imposition of the improper fees outweighs the utility, if any, of those practices.

108.    Defendant intentionally violated the UCL by engaging in its APPSN overdraft fee and multiple NSF Fee practices to collect millions of dollars in such fees that were not agreed to by the parties in the Fee Schedule and Deposit Account Agreement, and which fee practices were not authorized by Plaintiff and Class Members.  Defendant knew it was not permitted to do this.

109.    Plaintiff and the Class Members suffered ascertainable loss as a result of Defendant's multiple NSF Fee and Overdraft Fee practices, which necessarily flowed directly from Defendant's deceit in its scheme to systematically assess such fees against its account holders.

110.    Plaintiff and all Class Members justifiably relied on Defendant's deceptive representations they would be assessed fees only as provided in the Class Period Fee Schedule and Account Agreement.

111.    Defendant's unfair business practice alleged herein are immoral, unethical, oppressive, unscrupulous, unconscionable, and/or substantially injurious to Plaintiff and the Class Members.  Plaintiff and the Class Members have been damaged by Defendant's deceptive practices.  As a result of Defendant's violations of the UCL, Plaintiff and members of the Class have paid, and/or will continue to pay improper multiple NSF Fees and OD Fees, and thereby have suffered and will continue to suffer actual damages.

## COUNT VI

**(Violation of the California Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750 et seq.)**

112.    The preceding allegations are incorporated by reference and re-alleged as if fully set forth herein.

113.    Defendant's Account Contract is a transaction under Civil Code § 1761(e).  By entering into the subject transactions with Defendant, Plaintiff and Class Members are consumers as that term is defined in Civil Code § 1761(d).

114.    Defendant's provision of a debit card is a 'service' is defined in Civil Code § 1761(b), and Defendant's bank accounts represent a financial good under Civil Code § 1761(a).

115.   Defendant has violated Civil Code §§ 1770(a)(5), (9), and (14), through the acts alleged herein, thereby entitling Plaintiff and members of the class to relief under Civil Code § 1780 by, *inter alia*:

- Representing that goods or services have characteristics which they do not have or that a person has a status, affiliation or connection which he or she does not have, in violation of § 1770(a)(5);

- Representing goods or services with intent not to sell them as advertised, in violation of § 1770(a)(9); and,

- Representing that a transaction confers or involves rights, remedies or obligations which it does not have or involve, or which are prohibited by law, in violation of § 1770(a)(I4).

116.   Defendant's violations of Civil Code § 1770 described above present a continuing threat to class members and members of the public in that Defendant is continuing to engage in these practices, is continuing to refuse to refund amounts paid by consumers, and will not cease until an injunction is issued by the Court. Plaintiff and the members of the class are also entitled to an award of attorneys' fees and costs against Defendant pursuant to the provisions of Civil Code § 1780(d).

117.   By letter dated July 7, 2021, Plaintiff will have mailed notice to Defendant as directed in Civil Code § 1782, to notify Defendant of its violations of the CLRA and demand that Defendant provide remedies to rectify their conduct.  If Defendant fails to give or agree, within a reasonable time, a sufficient remedy as set forth in California Civil Code § 1782(c) for the above-mentioned violations of law, Plaintiff will seek leave to amend this complaint to add a prayer for relief for damages under the CLRA, including putative damages, but do not seek such damages until appropriate time after service of the letter has lapsed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Class, demands a jury trial on all claims so triable and judgment as follows:

A.   Certifying the proposed Class, appointing the Plaintiff as representative of the Class, and appointing counsel for Plaintiff as lead counsel for the Class;

B.     Declaring that PCU's policies and practices as described herein constitute a breach of contract and a breach of the covenant of good faith and fair dealing or unjust enrichment;

C.     Enjoining PCU from the wrongful conduct as described herein;

D.     Awarding restitution of all fees at issue paid to PCU by Plaintiff and the Class as a result of the wrongs alleged herein in an amount to be determined at trial;

E.     Compelling disgorgement of the ill-gotten gains derived by PCU from its misconduct;

F.     Awarding actual and/or compensatory damages in an amount according to proof;

G.     Awarding pre-judgment interest at the maximum rate permitted by applicable law;

H.     Reimbursing all costs, expenses, and disbursements accrued by Plaintiff in connection with this action, including reasonable attorneys' fees, costs, and expenses, pursuant to applicable law and any other basis; and

I.     Awarding such other relief as this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff and all others similarly situated hereby demand trial by jury on all issues in this Class Action Complaint that are so triable.

Dated:  July 7, 2021

Respectfully submitted,

**THE KICK LAW FIRM, APC**

By:  */s/ Taras Kick*
Taras Kick  (CA State Bar No. 143379)
Taras@kicklawfirm.com
Jeffrey Bils (CA State Bar No. 301629)
Jeff@kicklawfirm.com
**THE KICK LAW FIRM, APC**
815 Moraga Drive
Los Angeles, CA 90049
Telephone: (310) 395-2988
Facsimile: (310) 395-2088

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Jeffrey Kaliel (CA State Bar No. 238293)
jkaliel@kalielpllc.com
Sophia Gold (CA State Bar No. 307971)
sgold@kalielpllc.com
**KALIEL GOLD PLLC**
1875 Connecticut Avenue NW
10th Floor
Washington, D.C. 20009
Tel:    (202) 350-4783

Attorneys for Plaintiff and the Proposed Class

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL