# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PANGNHIA VUE,<br><br>  Plaintiff,<br><br>  v.<br><br>PENTAGON FEDERAL CREDIT UNION,<br><br>  Defendant. | Case No.  1:21-cv-01063-JLT-SAB<br><br>ORDER GRANTING PLAINTIFF'S MOTION TO SUBSTITUTE CLASS REPRESENTATIVES AND GRANTING IN PART DEFENDANT'S MOTION FOR SANCTIONS AND VACATING OCTOBER 9, 2024 HEARING<br><br>(ECF Nos. 50-53, 55, 56, 58-61, 64-65)<br><br>FIVE DAY DEADLINE |

Currently before the Court are Pangnhia Vue's ("Plaintiff") motion to substitute class representatives and Pentagon Federal Credit Union's ("Defendant" or "the Credit Union") motion for sanctions.

The Court, having reviewed the record, finds this matter suitable for decision without oral argument.  See Local Rule 230(g).  Accordingly, the previously scheduled hearing set on October 9, 2024, will be vacated and the parties will not be required to appear at that time.

## I.

## BACKGROUND

The Credit Union is engaged in providing banking services to consumers.  (Compl. at ¶ 6, ECF No. 1.)  Plaintiff holds a bank account at the Credit Union.  (Id. at ¶ 5.)  On May 6, 2021,

1

Plaintiff attempted to make a payment via ACH,[1] which the Credit Union rejected due to insufficient funds in her account and charged her a $30. insufficient funds fee ("NSF fee").  (Id. at ¶ 2, 14.)  Six days later, on May 12, 2021, the Credit Union processed the same item again, which was again returned unpaid due to insufficient funds in Plaintiff's account.  Plaintiff was charged another $30. NSF fee.  (Id. at ¶ 15.)  Other items were returned unpaid and reprocessed on May 7, 2021, and May 13, 2021.  (Id. at ¶ 18.)

On July 7, 2021, Plaintiff filed this action, individually and on behalf of all others similarly situated, alleging breach of contract, breach of the covenant of good faith and fair dealing, unjust enrichment, money had and received, violation of California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, et seq., and California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750 et seq.  (Id. at pp. 17-22.[2])

Defendant filed a motion to dismiss on August 19, 2021, which was opposed by Plaintiff.  (ECF Nos. 11, 14, 16, 17, 23, 24, 26, 27, 28, 33, 37.)  On September 29, 2023, the motion was denied as to the breach of contract claim and granted as to all other claims.  (ECF No. 38.)   On October 23, 2023, Defendant filed an answer to the complaint.  (ECF No. 39.)  On December 12, 2023, an initial scheduling conference was held, and the scheduling order issued setting deadlines for discovery and filing of a motion for class certification.  (ECF Nos. 42, 43.)  On May 24, 2024, Plaintiff filed an ex parte application to amend the scheduling order which was denied without prejudice to Plaintiff filing a properly noticed motion.  (ECF Nos. 46-48, 49.)

On August 26, 2024, Plaintiff filed the instant motion to substitute class representatives.  (ECF Nos. 50-53.)   On September 9, 2024, Defendant filed an opposition to the motion to substitute class representatives and the instant motion for sanctions.  (ECF Nos. 55, 56.)   On September 19, Plaintiff filed a reply to the opposition to the motion to substitute class representatives and objections.  (ECF Nos. 58-61.)  On September 23, 2024, Plaintiff filed an

---

[1] Plaintiff does not define ACH in her complaint.  However, according to the amended complaint attached to the motion to substitute, "ACH" is defined as Automated Clearing House.  (Proposed First Amended Complaint, Ex. B, PENFED Credit Union Membership Disclosures, ECF No. 52-2 at 32.)

[2] All references to pagination of specific documents pertain to those as indicated on the upper right corners via the CM/ECF electronic court docketing system.

opposition to the motion for sanctions.  (ECF No. 64-65.)  Defendant did not file a reply to Plaintiff's opposition to the motion for sanctions.

**II.**

**LEGAL STANDARDS**

**A.**     **Motion to Amend**

Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend shall be freely given when justice so requires.  Fed. R. Civ. P. 15(a)(2).  The Ninth Circuit has held that "[t]his policy is to be applied with extreme liberality."  Morongo Band of Mission Indians v. Rose, 893 F.2d 1074, 1079 (9th Cir. 1990); Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1051 (9th Cir. 2003).  After a responsive pleading is filed, "leave to amend should be granted unless amendment would cause prejudice to the opposing party, is sought in bad faith, is futile, or creates undue delay."  Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 607 (9th Cir. 1992).  "In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.' "  Eminence Capital, LLC, 316 F.3d at 1052 (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)).

However, once a scheduling order has been entered, amendment is governed by Federal Rule of Civil Procedure 16.  Johnson, 975 F.2d at 607-08.  The Rule 16 scheduling order and the timetable it establishes are binding and cannot be extended by party stipulation without the court's approval.  Scheduling Conferences and Orders, 6A Fed. Prac. & Proc. Civ. § 1522.1 (3d ed.)  Unlike the liberal leave to amend under Rule 15, amending a scheduling order requires a showing of good cause.  Fed. R. Civ. P. 16(b).  In determining if good cause exists, the court is to consider the diligence of the party seeking amendment and the pretrial schedule may be modified if it cannot reasonably be met despite the diligence of the party seeking the amendment.  Johnson, 975 F.2d at 609.

Where the party seeking to amend the scheduling order fails to show due diligence the

inquiry should end and the court should not grant the motion to modify.  <u>Zivkovic v. Southern California Edison, Co.</u>, 302 F.3d 1080, 1087 (9th Cir. 2002).  To allow a modification of the scheduling order without good cause would render scheduling orders essentially meaningless, and directly interferes with courts' attempts to manage their dockets and with the standard course of litigation in actions.  <u>Johnson</u>, 975 F.2d at 610 ("A scheduling order is not a frivolous piece of paper, idly entered . . . ."  (internal quotations and citation omitted)).

### B.    Sanctions for Failure of Party to Attend Deposition

Federal Rule of Civil Procedure 30 governs oral depositions and states, in pertinent part that "[a] party may, by oral questions, depose any person, including a party, without leave of court except as provided in Rule 30(a)(2).  The deponent's attendance may be compelled by subpoena under Rule 45." Fed. R. Civ. P. 30(a)(1).  The Rule also provides that "[t]he court may impose an appropriate sanction—including the reasonable expenses and attorney's fees incurred by any party—on a person who impedes, delays, or frustrates the fair examination of the deponent." Fed. R. Civ. P. 30(d)(2).

Rule 37 of the Federal Rule of Civil Procedure addresses the failure to cooperate in discovery and sanctions for such conduct.  "The court where the action is pending may, on motion, order sanctions if: (i) a party . . . fails, after being served with proper notice, to appear for that person's deposition[.]" Fed. R. Civ. P. 37(d)(1)(A)(i).  The Court may issue sanctions for the failure to comply with discovery obligations, including the following:

> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
> (iii) striking pleadings in whole or in part;
> (iv) staying further proceedings until the order is obeyed;
> (v) dismissing the action or proceeding in whole or in part;
> (vi) rendering a default judgment against the disobedient party; or
> (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed. R. Civ. P. 37(b)(2)(A).  In addition to the listed sanctions, 'the court must require the party failing to act, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other

circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(d)(a)(3). "[T]he burden of showing substantial justification and special circumstances is on the party being sanctioned." Hyde & Drath v. Baker, 24 F.3d 1162, 1171 (9th Cir. 1994), as amended (July 25, 1994). There is no requirement that bad faith be shown in order for a party to be sanctioned. Hyde & Drath, 24 F.3d at 1171.

**III.**

**DISCUSSION**

**A.      Motion for Leave to Amend**

1.      Standing to Move for Leave to Amend

Initially, the Court addresses Defendant's argument that since Plaintiff did not authorize her attorneys to file the motion to amend, there is no standing to seek leave to amend the complaint.      (Pentagon Federal Credit Union's Opp. to Pl.'s Mot. to Substitute Class Representatives ("Def.'s Opp.") at 6, ECF No. 55.)  Defendant argues that Plaintiff's counsel has not moved for class certification, nor have they been appointed class counsel.  Defendant contends that since counsel do not represent the class, they lack standing to move for substitution of the named plaintiff.  Defendant also contends that the nonparties want to intervene in this case, and the proper mechanism is to move to intervene under Rule 24, not Rule 15.  (Id.)

Plaintiff replies that Defendant's argument that this motion should be brought under Rule 24 is wrong and courts routinely grant amendment in these circumstances under Rules 15 and 16. (Reply at 7-8.)  Further, Plaintiff expressly authorized her counsel to use other named plaintiffs in her place at the outset of the litigation.  (Id. at 3; Decl. of Tyler J. Dosaj, dated September 19, 2024 (Sept. 19, 2024 Dosaj Decl.") ¶ 3, ECF No. 59.)

Defendant relies on Lidie v. State of Cal., 478 F.2d 552 (9th Cir. 1973), to argue that the proper mechanism to add new parties is Rule 24.  In Lidie, the Court found that the original plaintiffs to a class action were not entitled to the relief that they sought because at the time that the action was brought, the individual plaintiffs were not proper representatives of the class, the claims and defenses of the representatives were not typical of the claims and defenses of the class that they sought to represent.  478 F.2d at 555.

Nor could the plaintiffs' 'Motion to Amend' have cured their problem.  The motion was actually a motion to intervene by several additional plaintiffs.

Motions to intervene are liberally granted in mootness situations to avoid the problem of the granting of selective relief by defendants and the avoidance of the "dismissal or compromise" provisions of Fed.R.Civ.P. 23(e).  But where the original plaintiffs were never qualified to represent the class, a motion to intervene represents a back-door attempt to begin the action anew, and need not be granted.  Washington v. Wyman, 54 F.R.D. 266 (S.D.N.Y.1971).

The heart of the class action is the preponderance of questions of law and fact common to the plaintiffs seeking to assert the rights of the alleged class.  The new parties sought to be interjected into the action could not enhance the common cause, and would add to the idiosyncratic problems presented by the original plaintiffs.  The class action was correctly denied.

Lidie, 478 F.2d at 555.

However, as Plaintiff argues in her reply, courts regularly consider motions to substitute a representative in a class action complaint under Rule 15 or 16.  See Aguilar v. Boulder Brands, Inc., No. 3:12-CV-01862-BTM, 2014 WL 4352169, at *5-11 (S.D. Cal. Sept. 2, 2014); Fife v. Sci. Games Corp., No. 2:18-CV-00565-RBL, 2020 WL 4933959, at *3 (W.D. Wash. Aug. 24, 2020); Chinitz v. Intero Real Est. Servs., No. 18-CV-05623-BLF, 2021 WL 1753786, at *1 (N.D. Cal. May 4, 2021); Nilon v. Nat.-Immunogenics Corp., No. 3:12-CV-00930-LAB BG, 2014 WL 4197555, at *2 (S.D. Cal. Aug. 22, 2014).

In Aguilar, the plaintiff sought to substitute another plaintiff as class representative due to health issues with herself and her son that precluded her from serving as a class representative. The defendants argued that once the plaintiff moved to withdraw there was no case or controversy that remained and the court lacked jurisdiction and the complaint must be dismissed. Aguilar, 2014 WL 4352169, at *6.  The court considered that a case becomes moot where the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome of the litigation.  "However, the mootness doctrine is applied flexibly, particularly where the issues remain alive, even if the plaintiff's personal stake in the outcome has become moot" and this is "particularly appropriate in the context of class actions."  Id. (quoting Pitts v. Terrible Herbst, Inc., 653 F.3d 1081, 1086 (9th Cir.2011) (internal punctuation omitted).  This also applies to not yet certified class actions.

> Strictly speaking, if no motion to certify has been filed (perhaps if it has been filed but not acted on), the case is not yet a class action and so a dismissal of the named plaintiffs' claims should end the case. If the case is later restarted with a new plaintiff, it is a new commencement, a new suit. But the courts, both federal and Illinois, are not so strict. Unless jurisdiction never attached ... or the attempt to substitute comes long after the claims of the named plaintiffs were dismissed, substitution for the named plaintiffs is allowed.

> The courts thus disregard the jurisdictional void that is created when the named plaintiffs' claims are dismissed and, shortly afterwards, surrogates step forward to replace the named plaintiffs. This may seem irregular; but maybe there isn't really a jurisdictional void, since the class member who steps forward to take the place of the dismissed plaintiff has a real controversy with the defendant.

Aguilar, 2014 WL 4352169, at *7 (quoting Phillips v. Ford Motor Co., 435 F.3d 785, 787 (7th Cir. 2006) (internal citations omitted).

While Defendant argues that the non-parties have no standing to move to amend the complaint, "jurisdiction is not quite as mechanistic as Defendant contends. The case or controversy requirement was not fatally triggered the moment [Plaintiff] resolved to withdraw as the class representative. Rather, Plaintiffs have a short amount of time to substitute the plaintiff and save their case." Aguilar, 2014 WL 4352169, at *8. Here, Plaintiff's claims have not been dismissed and a live case and controversy exists. "Unless jurisdiction never attached . . . or the attempt to substitute comes long after the claims of the named plaintiffs were dismissed . . . substitution for the named plaintiffs is allowed. Phillips, 435 F.3d at 787 (internal citations omitted); see also Fife, 2020 WL 4933959, at *2 (even if plaintiff's counsel's representation ended sometime after she went missing, it did not end at that exact point); cf. Castillo v. United Rentals (N. Am.), Inc., No. C17-1573JLR, 2018 WL 3429936, at *2 (W.D. Wash. July 16, 2018) ("when the named plaintiff's claim is defective—say, for instance, the named plaintiff lacks standing—substitution of that named plaintiff is permissible only when the class or collective has already been certified"). To the extent that Defendant is arguing that substitution cannot be made prior to a class being certified (Opp. at 21-22), "courts in the Ninth Circuit have granted pre-certification motions to substitute putative class representatives." Bates v. Leprino Foods Co., No. 2:20-CV-00700-AWI-BAM, 2022 WL 3371584, at *3 (E.D. Cal. Aug. 16, 2022) (collecting cases).

Defendant further argues that Plaintiff's claims are moot and therefore the complaint

1   must be dismissed. (Opp. at 21-23.) Plaintiff counters that Plaintiff's claims are not moot as she
2   has not received all the relief to which she is entitled. (Reply at 5-7.) The Court finds that the
3   cases cited by Defendant are distinguishable. For example, in Emps.-Teamsters Loc. Nos. 175 &
4   505 Pension Tr. Fund v. Anchor Cap. Advisors ("Anchor Cap. Advisors"), 498 F.3d 920, 922
5   (9th Cir. 2007), the plaintiff's voluntarily dismissal of her claims prior to class certification made
6   the appeal of the order granting interim lead plaintiff status moot.

7        While Defendant is correct that "a suit brought as a class action must as a general rule be
8   dismissed for mootness when the personal claims of all named plaintiffs are satisfied and no
9   class has been properly certified[,]" Anchor Cap. Advisor, 498 F.3d at 924 (quoting Zeidman v.
10  J. Ray McDermott & Co., Inc., 651 F.2d 1030, 1045 (5th Cir.1981)), the Ninth Circuit has held
11  that "even if the district court has not yet addressed the class certification issue, mooting the
12  putative class representative's claims will not necessarily moot the class action[,]" Pitts, 653
13  F.3d at 1090. "To the extent that defendants may avoid a class action by 'picking off' the named
14  plaintiffs, the class claims are 'inherently transitory' and evade review, making an exception to
15  the mootness rule appropriate." Chen v. Allstate Ins. Co., 819 F.3d 1136, 1143 (9th Cir. 2016)
16  (quoting 5 James Wm. Moore, Moore's Federal Practice § 23.64[1][b] (3d ed. 2016)). "[A]
17  district court should decline to enter a judgment affording complete relief on a named plaintiff's
18  individual claims, over the plaintiff's objection, before the plaintiff has had a fair opportunity to
19  move for class certification." Chen, 819 F.3d at 1148.

20       Defendant contends that Plaintiff's claims became moot over three years ago when she
21  was refunded the single $30. fee that was at issue here and Plaintiff accepted and spent the
22  money (Def. Opp. at 7, 21-22), and that Beyard and Cardoza also lack standing because their
23  fees were refunded before Plaintiff filed the complaint in this action (id. at 17-18). Further,
24  Defendant argues that the Court lacks subject matter jurisdiction because the amount in
25  controversy is not met and Plaintiff did not adduce sufficient evidence in discovery to prove the
26  amount in controversy is met, Plaintiff and Beyard have criminal histories and are not adequate
27  class representatives, James engaged in a "kiting scheme" against the Credit Union and currently
28  owes them $61,436.81 for loans, and Plaintiff's counsel has made false statements. While

1   Defendant's arguments may be well taken and raise issues that should be addressed, these issues
2   are beyond the purview of the instant motion and may be raised in an appropriate motion if an
3   amended complaint is filed.[3]  See Floyd v. Amazon.com Inc., No. C22-1599-KKE, 2024 WL
4   1998315, at *2 (W.D. Wash. May 6, 2024) (whether the plaintiff is an adequate representative is
5   not before the court and defendants can fully litigate the issue in the context of a motion for class
6   certification); Pizana v. SanMedica Int'l LLC, 345 F.R.D. 469, 484 (E.D. Cal. 2022) (adequacy
7   of class representative is an inquiry reserved for a motion for class certification and courts often
8   allow substitution of original class representative who is deemed inadequate to represent the
9   class.)

10          2.      Rule 16 of the Federal Rules of Civil Procedure

11          Here, the December 12, 2023, scheduling order provided that any motion or stipulation to
12   amend the pleadings must be filed by May 31, 2024.  (ECF No. 43 at 2.)  On May 24, 2024,
13   Plaintiff filed an *ex parte* application to extend the deadline to amend the pleadings which was
14   denied without prejudice to the filing of a properly noticed motion.  (ECF No. 49 at 3.)   Plaintiff
15   did not file a noticed motion to amend the pleadings nor was the deadline to amend the pleadings
16   otherwise changed.  Further, based on the timing of the current motion, granting leave to amend
17   will require modification of the scheduling order to reopen discovery and extend the deadline to
18   file a motion for class certification.  Accordingly, Plaintiff's motion is evaluated under Rule 16
19   of the Federal Rules of Civil Procedure.  Johnson, 975 F.2d at 607-08.

20          As discussed above, under Rule 16(b) amending a scheduling order requires a showing of
21   good cause.  In determining if good cause exists, the court is to consider the diligence of the
22   party seeking amendment and the pretrial schedule may be modified if it cannot reasonably be
23   met despite the diligence of the party seeking the amendment.  Johnson, 975 F.2d at 609.

24          Plaintiff's counsel argues that they were diligent in moving to amend the complaint
25   because counsel did not become aware of the need to amend the scheduling order due to

26   _____

27   [3] Plaintiff addresses these arguments in reply and has filed objections to Defendant's statements in opposition to the
     motion.  Because the Court shall decline to address these issues in the instant motion, Plaintiff's arguments and
28   objections will not be addressed.

1   Plaintiff's lack of interest in participating in this action until July 22, 2024, when Plaintiff

2   unexpected stopped communicating with her counsel.  (Pl.'s Brief in Support of Motion to

3   Substitute Class Representatives (Mot. to Sub.") 8, ECF No. 51.)

4         Plaintiff relies on <u>Floyd</u>, 2024 WL 1998315, to argue that good cause exists because the

5   plaintiff has lost interest in pursuing the litigation.  (Mot. to Sub. at 8.)  In <u>Floyd</u>, the court found

6   that good cause under Rule 16 was met where counsel moved to substitute new class

7   representatives approximately six weeks after the named plaintiff unexpected stopped

8   communicating with them.  2024 WL 1998315, at *4.  Similarly, in <u>Aguilar</u>, 2014 WL 4352169,

9   at *10, the motion to amend the complaint was brought within twenty-two days of first learning

10  that the plaintiff was unable to serve as a class representative.

11        Defendant asserts that Plaintiff has been attempting to add new parties since at least April

12  2, 2024, when Plaintiff first asked Defendant to consent to the filing of an amended complaint.

13  Defendant points out that Plaintiff attempted to add new parties on May 15, 2024, but did not file

14  the instant motion until three months later.  (Def.'s Opp. at 25.)  Defendant argues that Plaintiff's

15  attorneys have known of the need to substitute a new plaintiff for nearly three years when

16  interrogatory answers were served on November 9, 2021. (<u>Id.</u> at 25-26.)

17        Plaintiff's counsel replies that Plaintiff contacted counsel on August 30, 2024,

18  apologizing for her lack of communication and informing them that her father has cancer, and

19  she is seeking medical attention for herself due to having something in her breasts that needs to

20  be checked.  (Sept. 19, 2024 Dosaj Decl. at ¶ 2.)  Plaintiff argues that the relevant inquiry is

21  whether Plaintiff's recent health crisis could have reasonably been foreseen.  Plaintiff asserts that

22  counsel could not have anticipated at the December 12, 2023, scheduling conference that

23  Plaintiff would experience personal and family health issues in July of 2024.  Plaintiff states that

24  she was actively participating in the case up until the lack of communication in July 2024.

25  (Reply at 8-9.)

26        In the current motion, substitution is sought due to Plaintiff's lack of interest in

27  continuing to pursue this action and because she had stopped communicating with counsel.

28  (Mot. to Sub. at 8.)  Plaintiff has subsequently contacted counsel and explained that she and her

1  father have health issues that caused the lack of communication.  Therefore, the prior attempts to

2  amend to add new plaintiffs are not considered in addressing the delay in seeking amendment.

3  Here, counsel asserts that his last communication with Plaintiff was on July 22, 2024, and

4  attempts were made to contact her thereafter unsuccessfully.  On August 9, 2024, Plaintiff hung

5  up the phone when contacted by staff and an attempt was made to contact her on August 11,

6  2024.  (Decl. of Tyler J. Dosaj, dated August 26, 2024 ("Aug. 26, 2024 Dosaj Decl.") at ¶ 2,

7  ECF No. 52.)  The instant motion was filed on August 26, 2024.  (ECF No. 50-52.)  The motion

8  to substitute was filed within five weeks of the last contact with Plaintiff and the Court finds that

9  counsel was diligent in moving to substitute new plaintiffs due to the lack of communication

10  with Plaintiff.

11       Plaintiff argues that there is no prejudice to Defendant because the scheduling order can

12  be modified, and she will agree to a sixty-day extension of time.  Defendants assert that they will

13  suffer extreme prejudice if the motion is granted because a much longer extension would be

14  required due to serious issues affecting both the merits of the personal claims and their adequacy

15  as class representatives.[4]  (Def.'s Opp. at 8.)  Defendants argue the proposed representatives are

16  not "interchangeable" with Plaintiff as stated in the motion but have individual issues that will

17  require extensive discovery beyond that already provided.  (Id. at 27.)  For example, proposed

18  plaintiff James has allegedly engaged in a "kiting" scheme to steal approximately $55,000. from

19  the Credit Union.  (Id. at 8, 15-17, 27.)  Defendant contends that adding James as a plaintiff will

20  require multiple rounds of subpoenas to trace the flow of funds and restarting the discovery

21  period.  (Id. at 27.)  Plaintiff replies that the primary evidence here is Defendant's own

22  transaction data and contractual documents which have been in Defendant's possession at all

23  times and no plaintiff testimony will be required to prove the issues at trial.  (Reply at 10.)

24       This action was filed in July of 2021, and Defendant's motion to dismiss has been

25  granted in part.  The scheduling order issued with the deadline for discovery for class

26

27  [4] To the extent that Defendant raises the inadequacy of Plaintiff as a class representative and the lack of standing based on discovery not supporting Plaintiff's contentions in the complaint, these issues are not before the Court in the current motion to amend the complaint and shall not be addressed.  Defendant will have the opportunity to

28  address these issues in opposing the motion for class certification.  See Floyd, 2024 WL 1998315, at *3.

1  certification set to expire on October 11, 2024, and a motion for class certification to be filed by

2  December 18, 2024.  Granting Plaintiff's request to substitute class representatives will require

3  an extension of the discovery period to allow Defendant an opportunity to address the issues

4  identified with the proposed class representatives.  While it has been over three years since this

5  action was filed, the delay to date has not been the fault of the parties but is due to the Court's

6  inability to address the motion to dismiss in a more timely manner because of the impacted

7  caseloads in this district.  Further, although it is just months before the motion for class

8  certification is due, courts find that "[p]rejudice is generally mitigated where the case is still in

9  the discovery stage, no trial date is pending and no pretrial conference has occurred."  Pizana,

10  345 F.R.D. at 483 (quoting Calderon v. Tulare Reg'l Med. Ctr., No. 1:17-cv-0040-BAM, 2018

11  WL 4473626, at *5 (E.D. Cal. Sept. 17, 2018).

12       Accordingly, the Court finds good cause to grant the motion to amend under Rule 16.

13       3.     Rule 15 of the Federal Rules of Civil Procedure

14       Plaintiff also argues that leave to amend should be granted under Rule 15.  (Mot. at 14-

15  16.)  As previously stated, "[i]n the absence of any apparent or declared reason—such as undue

16  delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies

17  by amendments previously allowed, undue prejudice to the opposing party by virtue of

18  allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules

19  require, be 'freely given.' "  Eminence Capital, LLC, 316 F.3d at 1052.

20       Defendants do not specifically claim that leave to amend is made in bad faith and the

21  Court finds no evidence of bad faith by Plaintiff in bringing the current motion.  Although

22  Defendant argues that undue delay is present based on the previous attempts to amend the

23  complaint and they would suffer prejudice if the motion is granted, as previously discussed, the

24  Court finds no undue delay in Plaintiff moving to amend the complaint within five weeks of

25  losing contact with Plaintiff and Defendant will not suffer any undue prejudice if amendment is

26  granted at this stage of the proceedings.

27       Defendant argues that since Plaintiff's claims are moot the motion to amend should be

28  denied.  However, as discussed above, the Court finds that amendment in this instance would not

be futile and to the extent that Plaintiff argues that the proposed plaintiffs are inadequate representatives of the class, that issue can be addressed on class certification. Further, Plaintiff has not previously amended her complaint. Accordingly, the Court finds that amendment should be granted under Rule 15; and Plaintiff's motion to substitute class representatives shall be granted.

Plaintiff states that while the amended complaint only will proceed on the breach of contract claim, the claims dismissed in the order granting Defendant's motion to dismiss are realleged to preserve them on appeal. However, claims that are dismissed with prejudice and without leave to amend, are not required to be re-pled in a subsequent amended complaint to preserve them for appeal. Lacey v. Maricopa Cnty., 693 F.3d 896, 928 (9th Cir. 2012); Akhtar v. Mesa, 698 F.3d 1202, 1209 (9th Cir. 2012); see also Fitzpatrick v. Little, No. 1:22-CV-00162-DCN, 2024 WL 1308925, at *6 (D. Idaho Mar. 26, 2024) (striking re-pleaded claims that had previously been dismissed from amended complaint). Accordingly, Plaintiff shall be granted leave to file an amended complaint to substitute Plaintiffs but only to reallege the breach of contract claim.

### B.    Motion for Terminating Sanctions

Defendant moves to dismiss Plaintiff's complaint with prejudice under Rule 37(d) of the Federal Rules of Civil Procedure and Local Rule 251(e) due to Plaintiff's failure to appear for a noticed deposition, and for an order of reimbursement of attorney fees and costs. (Notice of Def. Pentagon Federal Credit Union's Mot. for Terminating Sanctions Under Rule 37(d) at 2, ECF No. 56.) Defendant argues that Plaintiff has made it clear that she will not comply with her obligations as a named plaintiff in this matter. (Def. Pentagon Federal Credit Union's Mot. for Terminating Sanctions Under Rule 37(d) ("Def.'s Mot.") 2, ECF No. 56-1.) Defendant contends that Plaintiff's counsel unilaterally cancelled Plaintiff's deposition on August 12, 2024, stating, "we have reason to believe that Ms. Vue is unable or unwilling to continue serving as a named plaintiff in this matter." (Id. (citing Dep. Emails, Ex. E-1).) Plaintiff's counsel later admitted that she had not responded to attempts to contact her and that Plaintiff hung up on a member of their staff. (Id.) Defendant contends that Plaintiff resurfaced on September 3, 2024, but her attorney

1  will not provide a clear answer on whether she will be continuing to participate in this action.

2  (Id.)

3       Defendant argues that Plaintiff's failure to appear at deposition is sufficient by itself to

4  warrant dismissal under Rule 34(d).  Further, Defendant contends that due to Plaintiff's refusal to

5  participate in the case dismissal is appropriate under Rule 41(b) for failure to prosecute.  (Id.)

6  Defendant also contends that Plaintiff should be ordered to reimburse it for significant expenses

7  incurred after she decided to stop participating in the action, but before her attorneys informed

8  Defendant.  On August 8, 2024, nearly three weeks after Plaintiff ceased communicating with

9  her attorneys, Defendant incurred significant expense for preparing a corporate representative

10  and defending a deposition in Texas.  Defendant seeks costs for both depositions.  (Id. at 3.)

11       Defendant asserts that Plaintiff's counsel in this action has a documented history of

12  continuing to pursue class action litigation after learning that a client is unable or unwilling to

13  participate in a case.  (Id. at 6.)  Specifically, Defendant claims that in one action, Plaintiff's

14  counsel continued litigation for five years after the client had died without disclosing the death to

15  opposing counsel or the court.  Defendant makes allegations of at least two other cases in which

16  Plaintiff's counsel has litigated on behalf of a deceased client.  (Id.)

17       Plaintiff responds that Defendant is using inflammatory material to distract the Court

18  from the simple relief that Plaintiff is requesting, amendment of the complaint.  (Pl.'s Opp. to

19  Def.'s Mot. for Terminating Sanctions ("Pl.'s Opp.") 10-11, ECF No. 64.)  Further, Plaintiff

20  argues that dismissal is inappropriate because the fifth factor, alternative sanctions, have not

21  been considered yet alone implemented.  Plaintiff asserts that no sanctions should be imposed

22  due to her failure to appear at her deposition due to her health issues.  (Id. at 11.)  Plaintiff asserts

23  that substitution of the class representative, not dismissal, is appropriate where she is unable or

24  unwilling to continue serving in the class representative role.[5]  (Id. at 11-15.)

25  _____

26  [5] Plaintiff spends much of the opposition arguing the appropriateness of granting the motion for substitution of the
    class representative.  However, as discussed above, the Court will grant the motion to substitute class representatives
27  and therefore, will not address Plaintiff's arguments in this regard.  Further, to the extent that Plaintiff argues that
    substitution, not sanctions, were granted in the cases cited, the cases address motions to amend to add a new
28  plaintiff, sanctions were not requested, and therefore the cases are not persuasive authority.  See Radio City, Inc. v.
    Celestron Acquisition, LLC, No. 5:20-CV-03642-EJD, 2023 WL 5519324 (N.D. Cal. Aug. 25, 2023); Tavakolian v.

1       Further, Plaintiff argues that substitution, not terminating sanctions are appropriate

2 considering the five factors.  (Id. at 15-19.)  Plaintiff also contends that even if her heath crisis

3 standing alone do not preclude sanctions, the surrounding circumstances, including the prompt

4 cancellation of the deposition make sanctions unwarranted.  Plaintiff argues that her and her

5 father's health issues raise a good faith dispute regarding her obligation to appear at the August

6 21, 2024 deposition.  (Id. at 19.)  Further, counsel argues that since Defendant was notified nine

7 days prior to the deposition, Defendant could have cancelled the court reporter without incurring

8 a fee.  Plaintiff asserts that courts have declined to impose sanctions where the deponent

9 provided ample notice they would not appear.  (Id. at 20.)

10      Plaintiff also argues that sanctions are typically awarded as a result of prolonged

11 discovery misconduct and repeated violations of court orders.  Plaintiff asserts that there is no

12 sanctionable conduct or discovery misconduct present here.  Plaintiff asserts that her failure to

13 appear at the deposition was not the result of willfulness, bad faith or fault of either herself or her

14 counsel.  Plaintiff also contends that she offered to pay the nonrefundable travel expenses made

15 prior to discovering that she would not be attending due to a health issue, but that now that it is

16 apparent that her failure was due to a health issue, even imposing the nonrefundable expenses is

17 inappropriate.  (Id. at 21.)

18      Plaintiff asserts that Defendant's request for sanctions as a result of the Rule 30(b)(6)

19 deposition is frivolous in every way and must be rejected.  The deposition took place as

20 scheduled and no unnecessary expenses were incurred.  The deposition produced evidence that is

21 highly relevant to the class claims.  (Id. at 23.)  Further, Plaintiff contends that there is no

22 authority to impose a duty on counsel to notify the opposing party of attorney-client or attorney

23 work-product, including the non-responsiveness of the client.  Plaintiff asserts that the only

24 obligation to inform the opposing party would arise where the attorney seeks to withdraw leaving

25 the client in propria persona.  (Id. at 23.)  Plaintiff also asserts that at the time of the Rule

26 30(b)(6) deposition counsel did not believe that Plaintiff had withdrawn entirely from the

---

Great Am. Life Ins. Co., 520CV01133SPGSHK, 2023 WL 8126867 (C.D. Cal. June 12, 2023); Bates, 2022 WL 3371584; Aguilar, 2014 WL 4352169; Castillo, 2018 WL 3429936.

1  litigation and Defendant ignores the distinction between individual and class actions.  (Id. at 24-
2  25.)

3      1.      Terminating Sanctions

4      Defendant seeks terminating sanctions for Plaintiff's failure to appear at her noticed
5  deposition.  (Def.'s Mot. at 6-9.)  The Ninth Circuit has constructed a five-part test to determine
6  whether terminating sanctions under Rule 37(b)(2) are appropriate: "(1) the public's interest in
7  expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of
8  prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on
9  their merits; and (5) the availability of less drastic sanctions."  Connecticut Gen. Life Ins. Co. v.
10  New Images of Beverly Hills, 482 F.3d 1091, 1096 (9th Cir. 2007); In re Phenylpropanolamine
11  (PPA) Prod. Liab. Litig., 460 F.3d 1217, 1226 (9th Cir. 2006).  "These factors are 'not a series of
12  conditions precedent before the judge can do anything,' but a 'way for a district judge to think
13  about what to do.' "  In re Phenylpropanolamine (PPA) Prod. Liab. Litig., 460 F.3d at 1226
14  (quoting Valley Eng'rs v. Elec. Eng'g Co., 158 F.3d 1051, 1057 (9th Cir.1998).

15      Dismissal is a harsh sanction that should only be imposed in the extreme circumstances.
16  In re Phenylpropanolamine (PPA) Prod. Liab. Litig., 460 F.3d at 1226.  "Only 'willfulness, bad
17  faith, and fault' justify terminating sanctions."  Connecticut Gen. Life Ins. Co., 482 F.3d at 1096;
18  see also In re Phenylpropanolamine (PPA) Prod. Liab. Litig., 460 F.3d at 1233 ("Rule 37
19  sanctions, including dismissal, may be imposed where the violation is 'due to willfulness, bad
20  faith, or fault of the party.")

21      Here, considering the above factors, the Court finds that terminating sanctions are not
22  warranted for Plaintiff's failure to attend the deposition.

23      The public's interest in expeditious resolution of litigation and the Court's need to
24  manage its docket weigh against terminating sanctions as dismissal of this action would result in
25  the filing of a new case and would waste the resources of the court and the parties.  In fact,
26  Defendant's motion notes numerous previous actions against Defendant asserting the same claim
27  regarding the NSF fees that have been filed and dismissed.

28      The risk of prejudice to Defendant also weighs against dismissal of this matter.  While

Defendant contends that Plaintiff's failure to participate in any manner in this litigation will prevent litigation of the matter on the merits (Def.'s Mot. at 7-8), other than failing to appear at her deposition, there is no evidence that Plaintiff failed to participate in the litigation. Specifically, Plaintiff responded to Defendant's interrogatories on October 23, 2023.  (Aug. 26, 2024 Dosaj Decl. at ¶ 3.)  Although Plaintiff did fail to contact counsel for a period of time, she has reconnected with counsel and new plaintiffs are ready to step in to act as class representatives.

Defendant also contends that Plaintiff's failure to appear for a deposition has substantially interfered with its ability to conduct critical discovery as the issue of interpretation of the contractual language could reasonably be interpreted in favor of either party.  (Def.'s Mot. at 8.)  "What is most critical for case-dispositive sanctions, regarding risk of prejudice and of less drastic sanctions, is whether the discovery violations 'threaten to interfere with the rightful decision of the case.' "  Connecticut Gen. Life Ins. Co., 482 F.3d at 1097 (quoting Valley Eng'rs, 158 F.3d at 1057).  While Plaintiff failed to appear for her deposition, the Court finds that any prejudice to Defendant due to the failure of Plaintiff to appear for her deposition is mitigated by the ability to depose any newly named putative class representatives.

"Public policy favors disposition of cases on the merits."  Pagtalunan v. Galaza, 291 F.3d 639, 643 (9th Cir. 2002); see also In re Phenylpropanolamine (PPA) Prod. Liab. Litig., 460 F.3d at 1228 ("We have often said that the public policy favoring disposition of cases on their merits strongly counsels against dismissal.").  Therefore, this factor weighs against dismissal.

Finally, Defendant argues that dismissal should be with prejudice because no lesser sanction would be appropriate.  (Def.'s Mot. at 9.)  In considering availability of lesser sanctions, the court is to consider whether lesser sanctions have been considered, whether lesser sanctions have been tried, and whether the recalcitrant party has been warned about the possibility of case-dispositive sanctions.  Connecticut Gen. Life Ins. Co., 482 F.3d at 1096; Computer Task Grp., Inc. v. Brotby, 364 F.3d 1112, 1116 (9th Cir. 2004).

The Court notes that there have been no prior discovery disputes, no prior sanctions have been attempted to compel Plaintiff to appear for deposition; and Plaintiff has not been warned

1   that the failure to appear for deposition would result in dismissal of this action.  See Simmons v.

2   McQueen, No. 3:23-CV-5283-DWC, 2024 WL 2302560, at *2 (W.D. Wash. 2024) (finding it

3   dispositive of the motion for terminating sanctions that no prior discovery sanctions had been

4   requested).   Nor do the facts here show that Plaintiff has so damaged the integrity of the

5   discovery process that "there can never be assurance of proceeding on the true facts" making a

6   case dispositive sanction appropriate.  Connecticut Gen. Life Ins. Co., 482 F.3d at 1097.

7          Accordingly, Defendant's motion for a terminating sanction is denied.

8          1.     Monetary Sanctions

9          Defendant also seeks an award of attorney fees and costs for Plaintiff's failure to appear

10  at the deposition and for the Rule 30(b)(6) deposition that occurred several weeks after Plaintiff

11  had stopped responding to counsel.  (Def.'s Mot. at 9-11.)

12          a.     **Plaintiff's deposition costs**

13          "Federal Rule of Civil Procedure 37 authorizes the district court, in its discretion, to

14  impose a wide range of sanctions when a party fails to comply with the rules of discovery or with

15  court orders enforcing those rules."  Wyle v. R.J. Reynolds Indus., Inc., 709 F.2d 585, 589 (9th

16  Cir. 1983).  As discussed above, Rule 37 provides that 'the court must require the party failing to

17  act, the attorney advising that party, or both to pay the reasonable expenses, including attorney's

18  fees, caused by the failure, unless the failure was substantially justified or other circumstances

19  make an award of expenses unjust."  Fed. R. Civ. P. 37(d)(a)(3).

20          The Ninth Circuit has held that "a good faith dispute concerning a discovery question

21  might, in the proper case, constitute 'substantial justification' " to reverse a Rule 37(b)(2)

22  sanction."   Hyde & Drath, 24 F.3d at 1171.  Plaintiff argues that, since her father has cancer and

23  she is addressing a health issue, this creates a good faith dispute regarding her obligation to

24  appear at the August 21, 2024 deposition.  The Court disagrees.

25          On June 10, 2024, defense counsel sent an email requesting a list of dates that Plaintiff

26  and her attorneys were available for Plaintiff's deposition.  (Scheduling Emails, attached to Decl.

27  of Michael Graziano ("Graziano Decl."), Ex. A-14 at 7, ECF 55-15.) After three weeks passed

28  without Vue's attorneys providing any dates, on July 1, 2024, defense counsel sent a follow-up

1   email again requesting Plaintiff's availability to be deposed.  (Id. at 2-3.)  On July 8, 2024,

2   Plaintiff's attorneys provided a list of dates on which they were available.  (Id. at 2.)  Defendant

3   selected August 21, 2024, and served a notice of deposition.  (Id.; Notice of Pl.'s Dep., attached

4   to Graziano Decl., Ex. A-15, ECF 55-16.)

5          Plaintiff's counsel knew that Plaintiff had undergone surgery.  On July 7, 2024, Plaintiff

6   informed counsel that she had recently undergone surgery which had rendered her unable to

7   respond to counsel's recent phone calls.  (Sept. 9, 2024 Dosaj Decl. at ¶ 2.)  On July 8, 2024,

8   Plaintiff's counsel provided the date upon which the deposition was noticed and the fact that her

9   father has cancer and that she had a health issue do not by themselves substantially justify her

10  failure to attend the deposition.  Plaintiff chose to file this action and accordingly was obligated

11  to comply with her discovery obligations, including sitting for a deposition.  While Plaintiff may

12  have a health issue, the opposition is devoid of any facts that would create a good faith dispute

13  that she was unable to attend the deposition.

14         "Unless a protective order is granted before the deposition, the party or witness has no

15  basis to refuse to attend the properly noticed deposition."  Abercrombie & Fitch Trading, Co. v.

16  Beauty Encounter, Inc., No. 8:23-CV-00496 WLH (ADS), 2024 WL 2209776, at *2 (C.D. Cal.

17  Apr. 3, 2024) (citing Pioche Mines Consol., Inc. v. Dolman, 333 F.2d 257, 269 (9th Cir. 1964);

18  Fed. R. Civ. P. 37(d)(2)).  Further, "[t]he Ninth Circuit has upheld severe sanctions for not

19  appearing at properly noticed depositions where a party fails to substantiate purported health

20  issue justifications."  Abercrombie & Fitch Trading, Co., 2024 WL 2209776, at *3 (collecting

21  cases).  The Court finds that Plaintiff has not shown that her failure to appear for the deposition

22  was substantially justified.

23         Plaintiff also argues that other circumstances would make the imposition of sanctions

24  unjust because Defendant was notified that it was unlikely that Plaintiff was going to appear for

25  the deposition nine days prior to the scheduled date and Defendant was able to cancel the court

26  reporter without incurring a fee.  The Court finds the cases relied upon by Plaintiff to be

27  distinguishable.  In Russell v. Walmart Inc., No. 2:19-CV-05495-MWF-JC, 2020 WL 4745546,

28  at *2 (C.D. Cal. July 5, 2020), the Court declined to award sanctions for the failure to appear for

a deposition as the offending party had provided ample notice that they would not appear such that fees and expenses claimed were not caused by the failure to appear at the local deposition.

In <u>Robbins v. Cortez</u>, No. CV 17-246-PA(E), 2021 WL 4242277, at *2 (C.D. Cal. Mar. 16, 2021), report and recommendation adopted sub nom. <u>Robbins v. Cortez</u>, the defendants were aware that the pro se plaintiff had never received notice of the deposition due the deposition notice being returned undelivered.  The case was dismissed for the plaintiff's failure to update the court and defendants of his current address and the court found that it would be unjust to award further sanctions.  No. CV 17-246-PA(E), 2021 WL 4241891, *2 (C.D. Cal. Apr. 13, 2021).

In <u>Sibley v. Choice Hotels Inernational, Inc.</u>, No. CV 14-634 (JS) (AYS), 2016 WL 868208, at *3 (E.D.N.Y. Mar. 7, 2016), the court found that the defendant's failure to attend the deposition was substantially justified where the plaintiff noticed an out of state deposition with a seven-day notice and Plaintiff refused to work with defense counsel to reschedule despite being informed multiple times that the deponent was unable to attend on the scheduled date.

Similarly, in <u>McFadden v. Ballard, Spahr, Andrews, & Ingersoll, LLP</u>, 243 F.R.D. 1, 9 (D.D.C. 2007), the plaintiff was served with a deposition notice and requested that the deposition occur after the close of discovery to allow certain documents to be obtained prior to the deposition.  The defendant agreed, but the parties could not come to an agreement on the proposed order continuing discovery deadlines.  Two days prior to the noticed deposition date, defense counsel sent a fax that they intended to proceed with the deposition the following day since plaintiff had not signed the consent order.  <u>McFadden</u>, 243 F.R.D. at *8-9.  Plaintiff's counsel informed defendant that plaintiff would be unable to attend as she resided out of state, plaintiff's counsel was in trial, and they were working on the assumption that the deposition was going to take place after the close of discovery.  The court found that the failure to attend the deposition was in good faith and would not award sanctions for costs that the defendant needlessly incurred. <u>Id.</u> at *9.

Plaintiff argues that defense counsel was informed on August 12, 2024, that the August 21, 2024 deposition needed to be cancelled as it had become reasonably certain that she would

1   not appear.  Plaintiff contends that Defendant was notified of the need to cancel at the earliest

2   possible time that it became reasonably likely that she would not be attending.  (Pl.'s Opp. at 21.)

3   However, here, unlike the cases relied upon by Plaintiff, on July 7, 2024, Plaintiff's counsel was

4   aware that Plaintiff had undergone surgery, and that she had not been communicating with

5   counsel.  The following day, counsel provided Defendant with the dates of availability for the

6   deposition.  Plaintiff argues that it was only on August 9, 2024, when Plaintiff hung up on a

7   member of counsel's staff, that counsel decided she had evidently lost interest in the case.  (Pl.'s

8   Opp. at 21.)  However, based on the dates that Plaintiff stated she would be available for the

9   deposition, Defendant had incurred travel expenses that were nonrefundable.  Plaintiff's counsel

10  was aware that Defendant would be required to incur travel expenses to take the deposition and

11  despite arguing that the soonest they could inform Defendant of Plaintiff's likely failure to

12  appear was August 16, 2024, counsel was aware earlier that Plaintiff had stopped responding to

13  their communication and delayed informing Defendant so that these nonrefundable expenses

14  could have been avoided.

15       The Court agrees that expenses for the deposition itself are not appropriate as Defendant

16  had prior notice that Plaintiff would not appear.  However, while Plaintiff argues that the prior

17  offer to pay Defendant's travel expenses is no longer appropriate because counsel is now aware

18  of the reason for Plaintiff's lack of contact, those non-refundable travel expenses incurred prior

19  to Plaintiff notifying Defendant that she would not attend are reasonably attributable to Plaintiff

20  and her counsel.  Accordingly, the Court shall grant the request for sanctions for the

21  nonrefundable travel expenses incurred prior to Plaintiff notifying Defendant that she would not

22  be attending the August 21, 2024 deposition.

23       **b.      Rule 30(b)(6) deposition costs**

24       Defendant also seeks sanctions for the costs of the Rule 30(b)(6) deposition that occurred

25  prior to being informed that Plaintiff was no longer interested in prosecuting this action.  The

26  Court agrees with Plaintiff that the request for costs for the Rule 30(b)(6) deposition should be

27  denied.  While Defendant contends that it incurred substantial fees and costs necessary to prepare

28  and present a corporate representative for deposition, these expenses were not unnecessarily

1  incurred as this action can continue with the substituted plaintiffs.  Accordingly, the Court denies

2  the request to impose sanctions for the deposition of the Rule 30(b)(6) deposition.

3          **c.      Attorney fees**

4          Rule 30 provides that "[t]he court may impose an appropriate sanction—including the

5  reasonable expenses and attorney's fees incurred by any party—on a person who impedes,

6  delays, or frustrates the fair examination of the deponent."  Fed. R. Civ. P. 30(d)(2).  Defendant

7  seeks reasonable attorney fees for the costs of bringing this motion.

8          The Court does find that the circumstances presented would make an award of attorney

9  fees unjust.  There are no allegations by which the Court finds any attorney fees were incurred

10  due to Plaintiff's failure to attend the deposition from the date upon which the deposition was

11  noticed and August 12, 2024, when Plaintiff's counsel notified Defendant that it was unlikely

12  Plaintiff would be attending the deposition.[6]  On August 16, 2024, Plaintiff contacted defense

13  counsel requesting a stipulation to file an amended complaint to substitute plaintiffs in this

14  matter.  (September 23, 2024, Decl. of Tyler Dosaj ("Sept. 23, 2024 Dosaj Decl.") ¶ 4, ECF No.

15  65.)  On August 22, 2024, Plaintiff's counsel offered to pay the non-refundable travel expenses

16  incurred by Defendant for the deposition of Plaintiff.  (Id. at ¶ 9.)  Had Defendant stipulated to

17  the filing of the amended complaint and to accepting the offer for reimbursement of the non-

18  refundable expenses incurred, the current motion would have been unnecessary.  Accordingly,

19  the Court finds it would be unjust to order Plaintiff to pay attorney fees for the current motion for

20  sanctions.

21                              **IV.**

22                      **CONCLUSION AND ORDER**

23          Based on the foregoing, IT IS HEREBY ORDERED that:

24          1.      Plaintiff's motion to substitute class representatives (ECF No. 50) is GRANTED

25                  and Plaintiff shall file an amended complaint for her breach of contract claim and

26                  substituting plaintiffs within **five (5) days** of the date of entry of this order;

27  _____

28  [6] The Court notes that Defendant has not filed a reply to Plaintiff's opposition contesting that attorney fees are not warranted.

22

2.     Defendant's motion for sanctions is GRANTED IN PART and Plaintiff and her counsel are jointly and severally liable to pay Defendant's nonrefundable travel expenses incurred in the August 21, 2024 deposition of Plaintiff;

3.     Within **five (5) days** of the date of entry of this order, Defendant shall submit a) the nonrefundable travel expenses to the Court for review and b) the parties shall submit a joint scheduling report proposing deadlines for non-expert class action discovery and the filing of a motion to certify the class; and

4.     The October 9, 2024 hearing is VACATED.

IT IS SO ORDERED.

Dated:   **October 4, 2024**

UNITED STATES MAGISTRATE JUDGE

23