Taras Kick, CA Bar No. 143379
Taras@kicklawfirm.com
Tyler J. Dosaj, CA Bar No. 306938
Tyler@kicklawfirm.com
**THE KICK LAW FIRM, APC**
815 Moraga Drive
Los Angeles, California 90049
Telephone: (310) 395-2988
Facsimile: (310) 395-2088

*Attorneys for Plaintiffs and the Putative Class*

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION

| | |
|---|---|
| DENISE BEYARD, CAROLINE CARDOZA, and CALVIN JAMES, individually, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>PENTAGON FEDERAL CREDIT UNION, and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No. 1:21-cv-01063-JLT-SAB<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>Judge: Hon. Jennifer L. Thurston<br><br>Magistrate Judge: Hon. Stanley A. Boone |

# CLASS ACTION COMPLAINT

Plaintiffs Denise Beyard, Caroline Cardoza, and Calvin James ("Plaintiffs"), on behalf of themselves and all persons similarly situated bring this class action complaint against Pentagon Federal Credit Union ("PenFed," "PCU" or "Credit Union"), and allege the following:

# INTRODUCTION

1. When consumers open an account with their credit union, they have to enter into a standard contract written by the credit union and its lawyers. All the credit union has to do is honor the contract it wrote and comply with the terms it dictated.

2. PCU promises its customers that if their account balance drops too low to cover a particular item such as a check, debit, or electronic bill payment, PCU will charge the customer a single $30 insufficient funds fee ("NSF Fee") per item. But as Plaintiffs and consumers all over the country have discovered, PCU does not abide by this promise. Instead, PCU routinely charges its customers multiple NSF Fees for the same item, driving their account balances deeper into negative territory.

3. PCU's customers have been injured by the Credit Union's improper practices to the tune of millions of dollars bilked from their accounts in violation PCU's clear contractual commitments.

4. Plaintiffs, on behalf of themselves and a Class of similarly situated consumers, seek to end PCU's abusive and predatory practices and force it to refund all of these improper charges. They assert claims for breach of contract and seek damages, restitution, and injunctive relief, as set forth more fully below.

# PARTIES

5. Denise Beyard resides in Bakersfield, California and held a PCU account during the period relevant to this litigation.

6. Caroline Cardoza resides in Sun City, California and held a PCU account during the period relevant to this litigation.

7. Calvin James resides in Gardena, California and holds a PCU account.

8. Defendant Pentagon Federal Credit Union is engaged in the business of providing retail banking services to consumers, including Plaintiffs and members of the putative Class. PCU has its headquarters and its principal place of business in Alexandria, Virginia, and is a citizen of the Commonwealth of Virginia. It has more than $19 billion in assets.

**VENUE AND JURISDICTION**

9. This Court has jurisdiction over the subject matter of this action, among other reasons, pursuant to 28 U.S.C. § 1332(d)(2), because the matter in controversy exceeds $5,000,000, exclusive of interest and costs, and is a class action in which at least one member of the class is a citizen of a different State than Defendant. The number of members of the proposed Class in aggregate exceeds 100. 28 U.S.C. § 1332(d)(5)(B).

10. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and/or omissions giving rise to the Plaintiffs' claims occurred in this District. In addition, venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because Defendant conducts business in this district, including by operating ATMs in this District for use by its customers.

**FACTUAL BACKGROUND AND GENERAL ALLEGATIONS**

**I.    PCU CHARGES MORE THAN ONE NSF FEE ON THE SAME ITEM**

11. PCU's Membership Disclosures ("Deposit Agreement") and Fee Schedule (collectively "Account Documents") allow it to charge a *single* $30 NSF Fee or a *single* $30 OD Fee when an item is returned for insufficient funds or paid despite insufficient funds.

12. PCU breaches its contract by charging more than one $30 NSF Fee on the same item, since the contract explicitly states—and reasonable consumers understand—that the same item can only incur a single NSF or OD Fee.

13. PCU's abusive practices are not standard within the financial services industry. Indeed, major banks like JP Morgan Chase—the largest consumer bank in the country—charge one NSF Fee per item, even if that item is resubmitted for payment multiple times. And while some other banks engage in the same practices as PCU, they clearly disclose those charges in the deposit agreements with their customers.

14. PCU's Deposit Agreement does not say that PCU repeatedly charges customers multiple NSF fees on a single item. To the contrary, the Deposit Agreement indicates it will only charge a single NSF Fee or OD Fee on an item.

**A. Plaintiffs' Experience**.

15. In support of her claims, Plaintiff Beyard offers examples of fees that should not have been assessed against her account. As alleged below, PCU: (a) reprocessed previously declined items; and (b) charged an additional fee upon reprocessing, for a total assessment of *$60 or more in fees on each item*.

16. On October 31, 2019, Plaintiff Beyard attempted a payment via ACH in the amount of $163.24 in a transaction described on her account statements as "Preauth Debit Acima 8012971982." PCU rejected payment of that item due to insufficient funds in Plaintiff Beyard's account and charged her a $30 NSF Fee for doing so. Plaintiff Beyard does not dispute this initial fee, as it is allowed by PCU's Deposit Agreement.

17. Unbeknownst to Plaintiff Beyard, and without her request to PCU to reprocess the item, however, on November 5, 2019, PCU processed the same item again, with PCU labeling the transaction "Acima Retry Pymt" on her statements. Again, PCU returned the item unpaid and charged Plaintiff Beyard *another* $30 NSF Fee for doing so. This same pattern occurred on November 13, 2019, and November 19, 2019.

18. In sum, PCU assessed Plaintiff Beyard $120 in fees in its effort to process a single payment.

19. Similarly, on November 28, 2018, Defendant charged Ms. Beyard an NSF Fee in the amount of $30.00 on a transaction described as "Returned Check 9002 Eff:11/27/18." On December 1, 2018, this check was resubmitted for payment, triggering another $30.00 NSF Fee on Ms. Beyard's account. In addition, by way of further example, Defendant charged Ms. Beyard a $30.00 NSF Fee on a $113.35 "Primerica Life Ins. Prem" transaction that was rejected for insufficient funds on October 3, 2019. When this item was reprocessed and again returned unpaid on October 15, 2019, Defendant charged Ms. Beyard another $30.00 NSF Fee. Plaintiff Beyard

believes this also occurred on other occasions, but discovery will be necessary of all of Plaintiff Beyard's account statements.

20.   In support of her claims, Plaintiff Cardoza offers examples of fees that should not have been assessed against her account. On March 20, 2020, Plaintiff Cardoza attempted a single payment in the amount of $4.99, in a transaction described on her account statements as "Paypal Inst Xfer." PCU returned the item unpaid and charged Plaintiff Cardoza a $30 NSF Fee, which Plaintiff Cardoza does not dispute. Six days later, however, on March 26, 2020, PCU reprocessed this item, describing the reprocessing attempt as "Paypal Retry Pymt." PCU returned the item unpaid and charged Plaintiff Cardoza another $30 NSF Fee for doing so. This same fact pattern occurred on at least April 21, 2020 and April 23, 2020, when PCU assessed $30 NSF Fees on reprocessing attempts described as "Att Retry Pymt." Plaintiff Cardoza believes this same fact pattern occurred on other occasions, but discovery will be necessary of all of Plaintiff Cardoza's account statements.

21.   In support of his claims, Plaintiff James offers examples of fees that should not have been assessed against his account. On June 8, 2021, Plaintiff James attempted a single payment in the amount of $387.00, in a transaction described on his account statements as "Att Payment." PCU returned the item unpaid and charged Plaintiff James a $30 NSF Fee, which Plaintiff James does not dispute. Two days later, however, on June 10, 2021, PCU reprocessed this item, describing the reprocessing attempt as "Att Retry Pymt." PCU returned the item unpaid and charged Plaintiff James another $30 NSF Fee for doing so. This same fact pattern occurred on at least February 9, 2018, when PCU assessed a $30 NSF Fee on a reprocessing attempt described as "Tcsfa /mabtcretry Pymt." Plaintiff James believes this same fact pattern occurred on other occasions, but discovery will be necessary of all of Plaintiff James's account statements.

**B. The Imposition of Multiple NSF Fees on a Single Item Violates PCU's Express Promises and Representations**

22.   PCU's Account Documents state that the Credit Union will assess a single fee of $30 for an item that is returned due to insufficient funds.

23. According to the Fee Schedule, at most a *single* fee will be assessed when an item is returned or paid into overdraft:

> Returned ACH (Originated at another financial institution), Check, or Preauthorized Debit
>
> - Non-sufficient Funds............................................................ 30.00

Fee Schedule, Ex. A (emphasis added).

24. This promise is further defined in the Deposit Agreement when PCU promises to only assess one fee per "item."

> **A fee will be assessed for non-sufficient funds** or uncollected funds (deposits on hold); refer to the Service Fees available at PenFed.org for the amount of this fee. **This fee applies to withdrawals by means of a check, ACH debit, or an electronic debit. This fee will be assessed should we decline to pay the item or pay the item, creating a negative balance on my account.** PenFed in its sole discretion will decide whether to pay an item thus creating a negative balance on my account. My account may be subject to other fees and charges. Service Fees are available online at PenFed.org or by telephone at 800-247-5626.
>
> . . .
>
> **At PenFed's sole discretion, each check or debit item will either be paid**, thereby bringing my account to a negative status, **or the item will be returned unpaid.** My account will be subject to the normal non-sufficient funds and returned-item charges then in effect.

Deposit Agreement, Ex. B, at 5, 22 (emphasis added).

25. The same check, automatic bill payment, or other electronic payment on an account is not a new "item" each time it is rejected for payment then reprocessed, especially when—as here—Plaintiff took no action to resubmit the item.

26. Even if PCU reprocesses an instruction for payment, it is still the same item. The Credit Union's reprocessing is simply another attempt to effectuate an accountholder's original order or instruction.

27. Further, the Deposit Agreement goes on to specifically discuss the type of transaction that Plaintiff undertook: a pre-authorized transfer. With respect to pre-authorized transfers, the Deposit Agreement promises:

**PREAUTHORIZED TRANSFERS. Your account will be charged a fee for each pre-authorized withdrawal which is not paid because of nonsufficient funds** or a fee for each pre-authorized withdrawal not paid because of uncollected funds.

Ex. B. at 13 (emphasis added).

28. As alleged herein, Plaintiffs took only a single action to make a single transfer; she therefore created may be charged only a single fee.

29. In sum, PCU promises that one $30 NSF Fee or one $30 OD Fee will be assessed per item, and this must mean all iterations of the same instruction for payment. As such, PCU breached the contract when it charged more than one fee per item.

30. A reasonable consumer would understand that PCU's Account Documents permit it to assess an NSF Fee only once per item.

31. Taken together, the representations and omissions identified above convey to customers that all submissions for payment of the same transaction will be treated as the same "item," which the Credit Union will either pay (resulting in an overdraft item) or return (resulting in a returned item) when it decides there are insufficient funds in the account. Nowhere does PCU disclose that it will treat each reprocessing of a check or ACH payment as a separate item, subject to additional fees, nor do PCU customers ever agree to such fees.

32. Customers reasonably understand, based on the language of the Account Documents, that the Credit Union's reprocessing of checks or ACH payments are simply additional attempts to complete the original order or instruction for payment, and as such, will not trigger additional NSF Fees. In other words, it is always the same item.

33. For example, Central Pacific Bank, a leading bank in Hawai'i, states in its Fee Schedule under the "MULTIPLE NSF FEES" subsection:

"Items and transactions (such as, for example, checks and electronic transactions/payments) returned unpaid due to insufficient/non-sufficient ("NSF") funds in your account, **may be resubmitted one or more times for payment, and a $32 fee will be imposed on you each time an item and transaction resubmitted for payment is returned due to insufficient/nonsufficient funds**." https://www.cpb.bank/media/2776/fee-001.pdf. (last visited April 27, 2021).

34. For further example, Klein Bank, which prior to its acquisition in 2019 by Old

National Bank, engaged in the same abusive practices as Defendant, stated as follows in its banking agreement:

> [W]e will charge you an NSF/Overdraft Fee each time: (1) a Bill Payment (electronic or check) is submitted to us for payment from your Bill Payment Account when, at the time of posting, your Bill Payment Account is overdrawn, would be overdrawn if we paid the item (whether or not we in fact pay it) or does not have sufficient available funds; or (2) we return, reverse, or decline to pay an item for any other reason authorized by the terms and conditions governing your Bill Payment Account. **We will charge an NSF/Overdraft Fee as provided in this section regardless of the number of times an item is submitted or resubmitted to us for payment, and regardless of whether we pay the item or return, reverse, or decline to pay the bill payment.**

*Consumer and Small Business Online Access Agreement*, Klein Bank ¶ H, https://www.kleinbankonline.com/bridge/disclosures/ib/disclose.html (last accessed September 25, 2019 and March 17, 2020) (emphasis added).

35. Air Academy Federal Credit Union contracts for its NSF fee as:

> "$32.00 **per presentment**."

*See*, https://www.aafcu.com/fees.html (emphasis added) (last visited on or about April 23, 2021).

36. Community Bank, N.A. unambiguously contracts on this issue:

> **You may be charged more than one Overdraft or NSF Fee if a merchant submits a single transaction multiple times after it has been rejected or returned**.

*See*, https://cbna.com/u/header/2019-Overdraft-and-Unavailable-Funds-Practices-Disclosure-FINAL-1.14.2020.pdf (emphasis added) (last visited on or about April 23, 2021).

37. Delta Community Credit Union contracts unambiguously as follows:

> "$35 **per presentment**."

*See*, https://www.deltacommunitycu.com/home/fees.aspx (emphasis added) (last visited on or about April 23, 2021). Further, in its Account Contract, Delta unambiguously states as follows

> The Bank reserves the right to charge you an overdraft/insufficient funds fee if you write a check or initiate an electronic transaction that, if posted, would overdraw your Checking Account. **Note that you may be charged an NSF fee each time a check or ACH is presented to us, even if it was previously submitted and rejected**.

*See*, https://www.deltacommunitycu.com/home/forms/member-savings-services-disclosures-and-agreements.aspx (emphasis added) (last visited on or about April 23, 2021).

38. USE Credit Union contracts as follows:

"Overdraft/Non-sufficient Funds (NSF): Applies to checks, Bill Pay, ACH, ATM/POS and other electronic debits that are paid or returned. **Fees are charged per presentment, meaning the same item is subject to multiple fees if presented for payment multiple times**."

https://www.usecu.org/files/Schedule_of_Fees.pdf (emphasis added) (last visited April 26, 2021)

39. First Financial Bank contracts unambiguously:

Merchants or payees may present an item multiple times for payment if the initial or subsequent presentment is rejected due to insufficient funds or other reason (representment). **Each presentment is considered an item and will be charged accordingly**."

*See,* https://www.bankatfirst.com/content/dam/bankatfirst/legal/special-handling-charges.pdf (emphasis added) (last visited on or about April 27, 2021).

40. First Hawaiian Bank unambiguously contracted in 2020 as follows:

You agree that **multiple attempts may be made to submit a returned item for payment and that multiple fees may be charged to you as a result of a returned item and resubmission**.

*See,* https://www.fhb.com/en/assets/File/Home_Banking/FHB_Online/Terms_and_Conditions_of_FHB_Online_Services_RXP1.pdf (emphasis added) (last visited on or about March 17, 2020).

41. First Northern Credit Union unambiguously contracts its NSF in its Fee Schedule as follows:

"$29.00 **per each presentment and any subsequent representment(s)**." *See,*

https://www.fncu.org/feeschedule/?scpage=1&scupdated=1&scorder=-click_count

(emphasis added) (last visited on or about April 23, 2021).

42. Further, First Northern in its Account Contract, unambiguously contracted its NSF Fee as of 2020 as follows:

You further agree that **we may charge a NSF fee each time an item is presented for payment even if the same item is presented for payment multiple times**. For example, if you wrote a check to a merchant who submitted the payment to us and we returned the item (resulting in a NSF fee), the merchant may re-present the check for payment again. If the second and any subsequent presentments are returned unpaid, **we may charge a NSF fee for each time we return the item. You understand this means you could be charged multiple NSF fees for one check** that you wrote as

that check could be presented and returned more than once. **Similarly**, if you authorize a merchant (or other individual or entity) to electronically debit your account, such as an ACH debit, **you understand there could be multiple submissions of the electronic debit request which could result in multiple NSF fees**

*See*, (https://www.fncu.org/SecureAsset.aspx?Path=/7/Member_Agreement_November_1_2019.pdf) (emphasis added) [last visited on or about March 17, 2020].

43. Glendale Federal Credit Union unambiguously contracts its NSF fee as,

"$30 **per presentment**."

*See*, https://www.glendalefcu.org/_/kcms-doc/2001/58294/Fee-Schedule.pdf.  (emphasis added) (last visited on or about April 26, 2021).

44. Liberty Financial contracts its NSF fee unambiguously as:

"$27.00 **per presentment**."

*See*, https://liberty.financial/about/fee-schedule/  (emphasis added) (last visited on or about April 23, 2021).

45. Members First Credit Union contracts unambiguously:

We reserve the right to charge an Non-Sufficient Funds Fee (NSF Fee) each time a transaction is presented if your account does not have sufficient funds to cover the transaction at the time of presentment and we decline the transaction for that reason. **This means that a transaction may incur more than one Non-Sufficient Funds Fee (NSF Fee) if it is presented more than once…we reserve the right to charge a Non-Sufficient Funds (NSF Fee) for both the original presentment and the representment** [.]

*See*, http://www.membersfirstfl.org/files/mfcufl/1/file/Membership_and_Account_Agreement.pdf (emphasis added) (last visited on or about April 23, 2021).

46. Meriwest Credit Union unambiguously contracts its fee as:

"$35.00/item **per presentment**".

https://www.meriwest.com/sites/www.meriwest.com/files/media/consumer_feesched.pdf (emphasis added) (last visited on or about April 23, 2021).

47. Partners 1st Federal Credit Union contracts unambiguously:

Consequently, because **we may charge a fee for an NSF item each time it is presented, we may charge you more than one fee for any given item. Therefore, multiple fees may be charged to you as a result of a returned**

> **item and resubmission regardless of the number of times an item is submitted or resubmitted to us for payment, and regardless of whether we pay the item or return, reverse, or decline to pay the item**.

*See,* https://s3.us-east-1.amazonaws.com/assets.partners1stcu.org/uploads/PDFs/Consumer_Account_Agreement.pdf (emphasis added) (last visited on or about April 23, 2021)

48. RBC Bank unambiguously contracts:
> "We may also charge against the Account an NSF fee for each item returned or rejected, **including for multiple returns or rejections of the same item**."

*See,* https://www.rbcbank.com/siteassets/Uploads/pdfs/Service-Agreement-for-Personal-Accounts.pdf (emphasis added) (last visited on or about April 23, 2021).

49. Regions Bank contracts unambiguously:
> If an item is presented for payment on your account at a time when there is an insufficient balance of available funds in your account to pay the item in full, you agree to pay us our charge for items drawn against insufficient or unavailable funds, whether or not we pay the item. **If any item is presented again after having previously been returned unpaid by us, you agree to pay this charge for each time the item is presented for payment and the balance of available funds in your account is insufficient to pay the item**.

*See,* https://www.regions.com/virtualdocuments/Deposit_Agreement_6_1_2018.pdf (emphasis added) (last visited on or about April 23, 2021).

50. Tyndall Credit Union Bank contracts its NSF fee as:
> "$20.00 **per presentment** (maximum 5 per day)."

*See,* https://tyndall.org/member_center/document_center/fee_schedule (emphasis added) (last visited on or about April 23, 2021).

51. PCU provides no such disclosure, and in so doing, breaches its contracts with accountholders, engages in bad faith conduct, and deceives its accountholders.

///

///

///

## CLASS ACTION ALLEGATIONS

52. Plaintiffs bring this case, and Plaintiffs' cause of action, as a class action pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and (b)(3) on behalf of the following class:

> All persons who, within the applicable statute of limitations period, were charged more than one NSF Fee for the same item on a PCU account.

53. Excluded from the Class are: (1) any entity in which Defendant has a controlling interest; (2) officers or directors of Defendant; (3) this Court and any of its employees assigned to work on the case; and (4) all employees of the law firms representing Plaintiffs and the Class Members.

54. Plaintiffs reserve the right to modify or amend the definition of the proposed Class and/or to add a Subclass(es) if necessary before this Court determines whether certification is appropriate.

55. This action has been brought and may be properly maintained on behalf of each member of the Class under Federal Rule of Civil Procedure 23.

56. **Numerosity of the Class (Federal Rule of Civil Procedure 23(a)(1))** – The parties are numerous such that joinder is impracticable. Upon information and belief, and subject to class discovery, the Class consist of thousands of members or more, the identities of whom are within the exclusive knowledge of and can be ascertained only by resort to PCU's records. PCU has the administrative capability through its computer systems and other records to identify all members of the Class, and such specific information is not otherwise available to Plaintiffs.

57. It is impracticable to bring Class Members' individual claims before the Court. Class treatment permits a large number of similarly situated persons or entities to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of evidence, effort, expense, or the possibility of inconsistent or contradictory judgments that numerous individual actions would engender. The benefits of the class mechanism, including providing injured persons or entities with a method for obtaining redress on claims that might not be practicable to

pursue individually, substantially outweigh any difficulties that may arise in the management of this class action.

58. Upon information and belief, Defendant has databases, and/or other documentation, of its customers' transactions and account enrollment, including electronically stored information. These databases and/or documents can be analyzed by an expert to ascertain which of Defendant's account holders has been harmed by its practices and thus qualifies as a Class Member. Further, the Class definition identifies groups of unnamed plaintiffs by describing a set of common characteristics sufficient to allow a member of that group to identify herself or herself as having a right to recover. Other than by direct notice through mail or email, alternative proper and sufficient notice of this action may be provided to the Class Members through notice published in newspapers or other publications.

59. **Commonality (Federal Rules of Civil Procedure, Rule 23(a)(2))** – The questions here are ones of common or general interest such that there is a well-defined community of interest among the members of the Class. The legal elements of a breach of contract claim and an unjust enrichment claim are substantially similar in all states from which inclusion of class members will be sought, or sub-classes may be created, such that certification will be appropriate. Further, in its Account Agreement, which is attached as Exhibit B, on information and belief, Defendant contends that uniform laws should be applied to class members regardless of the state of their citizenship, including the NACHA regulations which apply to all class members regardless of their state of citizenship. These questions predominate over questions that may affect only individual Class members because PCU has acted on grounds generally applicable to the Class. Such common legal or factual questions include, but are not limited to:

    a. Whether PCU improperly charged NSF Fees;

    b. Whether any of the conduct enumerated above violates the contract; and

    c. The appropriate measure of damages.

60. **Typicality (Federal Rules of Civil Procedure, Rule 23(a)(3))** – Plaintiffs' claims are typical of all of the Class Members' claims. The evidence and the legal theories regarding Defendant's alleged wrongful conduct committed against Plaintiffs and all of the Class Members

are substantially the same because all of the relevant agreements between Defendant and its customers, including the Fee Schedule and the Deposit Account Agreement, were identical as to all relevant terms, and also because, *inter alia*, the challenged practices of charging customers for improper fees are uniform for Plaintiffs and all Class Members. Accordingly, in pursuing their own self-interest in litigating these claims, Plaintiffs will also serve the interests of the other Class Members.

61. **Adequacy (Federal Rules of Civil Procedure, Rule 23(a)(4))** – Plaintiffs are more than adequate representatives of the Class in that they had a PCU account and suffered damages as a result of Defendant's improper business practices. In addition: Plaintiffs are committed to the vigorous prosecution of this action on behalf of themselves and all others similarly situated and have retained competent counsel experienced in the prosecution of class actions and, in particular, class actions on behalf of consumers against financial institutions; there is no conflict of interest between Plaintiffs and the unnamed Class Members; they anticipate no difficulty in the management of this litigation as a class action; and, Plaintiffs' legal counsel has the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

62. **Predominance and Superiority (Federal Rules of Civil Procedure, Rule 23(b)(3))** – The matter is properly maintained as a class action under Rule 23(b)(3) because the common questions of law or fact identified herein and to be identified through discovery predominate over questions that may affect only individual Class Members. Further, the class action is superior to all other available methods for the fair and efficient adjudication of this matter. Because the injuries suffered by the individual Class Members are relatively small, the expense and burden of individual litigation would make it virtually impossible for Plaintiffs and Class Members to individually seek redress for Defendant's wrongful conduct. Even if any individual person or group(s) of Class Members could afford individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed. The class action device is preferable to individual litigation because it provides the benefits of unitary adjudication, economies of scale, and comprehensive adjudication by a single court. In contrast, the prosecution of separate actions by individual Class

Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members that would establish incompatible standards of conduct for the party (or parties) opposing the Class and would lead to repetitious trials of the numerous common questions of fact and law. Plaintiffs know of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action. As a result, a class action is superior to other available methods for the fair and efficient adjudication of this controversy. Absent a class action, Plaintiffs and the Class Members will continue to suffer losses, thereby allowing Defendant's violations of law to proceed without remedy and allowing Defendant to retain the proceeds of their ill-gotten gains.

63. This particular forum is desirable for this litigation because Plaintiff Beyard resides in this District, and the claims arose from activities which occurred in this District. Plaintiffs do not foresee significant difficulties in managing the class action in that the major issues in dispute are susceptible to class proof.

64. Plaintiffs anticipate the issuance of notice, setting forth the subject and nature of the instant action, to the proposed Class Members. Upon information and belief, Defendant's own business records and/or electronic media can be utilized for the contemplated notices. To the extent that any further notices may be required, Plaintiffs anticipate using additional media and/or mailings.

65. This matter is properly maintained as a class action pursuant to Rule 23(b) of the Federal Rules of Civil Procedure, in that:

    a. Without class certification and determination of declaratory, injunctive, statutory and other legal questions within the Class format, prosecution of separate actions by individual members of the Class will create the risk of:

        1. Inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the parties opposing the Class; or

        2. Adjudication with respect to individual members of the Class, which would as a practical matter be dispositive of the interests of the other

  members not parties to the adjudication or substantially impair or impede their ability to protect their interests. The parties opposing the Class have acted or refused to act on grounds generally applicable to each member of the Class, thereby making appropriate final injunctive or corresponding declaratory relief with respect to the Class as a whole.

  b. Common questions of law and fact exist as to the members of the Class and predominate over any questions affecting only individual members, and a class action is superior to other available methods of the fair and efficient adjudication of the controversy, including consideration of:

   1. The interests of the members of the Class in individually controlling the prosecution or defense of separate actions;

   2. The extent and nature of any litigation concerning controversy already commenced by or against members of the Class;

   3. The desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

   4. The difficulties likely to be encountered in the management of a class action.

66. All conditions precedent to bringing this action have been satisfied and/or waived.

## CAUSE OF ACTION

### COUNT I
### BREACH OF CONTRACT
### (On Behalf of Plaintiffs and the Class)

67. Plaintiffs repeat, reallege, and incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

68. Plaintiffs and PCU contracted for account services, as embodied in the relevant account documents.

69. Defendant mischaracterized in the Account Documents its true NSF Fee practices and breached the express terms of the Account Documents.

70. No contract provision authorizes Defendant to charge more than one NSF Fee on the same item.

71. Defendant has breached its contracts with Plaintiffs and the Class through its NSF fee policies and practices as alleged herein.

72. Plaintiffs and members of the putative Class have performed all of the obligations on them pursuant to the Credit Union's agreements.

73. Plaintiffs and members of the putative Class have sustained monetary damages as a result of each of Defendant's breaches.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of the Class, demand a jury trial on all claims so triable and judgment as follows:

A. Certifying the proposed Class, appointing the Plaintiffs as representatives of the Class, and appointing counsel for Plaintiffs as lead counsel for the Class;

B. Declaring that PCU's policies and practices as described herein constitute a breach of contract;

C. Enjoining PCU from the wrongful conduct as described herein;

D. Awarding restitution of all fees at issue paid to PCU by Plaintiffs and the Class as a result of the wrongs alleged herein in an amount to be determined at trial;

E. Compelling disgorgement of the ill-gotten gains derived by PCU from its misconduct;

F. Awarding actual and/or compensatory damages in an amount according to proof;

G. Awarding pre-judgment interest at the maximum rate permitted by applicable law;

H. Reimbursing all costs, expenses, and disbursements accrued by Plaintiffs in connection with this action, including reasonable attorneys' fees, costs, and expenses, pursuant to applicable law and any other basis; and

I. Awarding such other relief as this Court deems just and proper.

# DEMAND FOR JURY TRIAL

Plaintiffs and all others similarly situated hereby demand trial by jury on all issues in this Class Action Complaint that are so triable.

Dated: October 9, 2024

Respectfully submitted,

**THE KICK LAW FIRM, APC**

By: */s/ Taras Kick*
Taras Kick (CA State Bar No. 143379)
Taras@kicklawfirm.com
Tyler J. Dosaj (CA State Bar No. 306938)
Tyler@kicklawfirm.com
**THE KICK LAW FIRM, APC**
815 Moraga Drive
Los Angeles, CA 90049
Telephone: (310) 395-2988
Facsimile: (310) 395-2088

*Attorneys for Plaintiffs and the Putative Class*