UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Denise Beyard, et al.,<br><br>          Plaintiffs,<br><br>    v.<br><br>Pentagon Federal Credit Union, et al.,<br><br>          Defendants. | No. 1:21-cv-01063-KJM-SAB<br><br>ORDER |

Pentagon Federal Credit Union, the defendant in this proposed class action, moves to dismiss for lack of subject matter jurisdiction and improper venue. The court **denies** the motion in both respects. As explained in this order, there is a live case or controversy, a substantial part of the disputed transactions occurred within this District, and a single action in this district will serve the interests of justice and avoid unnecessary delays and confusion.

**I.    MOOTNESS**

Panghnia Vue filed this case in 2021. *See generally* Compl., ECF No. 1. She alleged the credit union, on two separate occasions, had wrongly charged her a duplicative $30 fee for withdrawals exceeding her account balance. *See id.* ¶¶ 14–18. She also alleged the credit union had charged similarly duplicative fees to several other members, and she proposed litigating on behalf of a class of those members. *See id.* ¶¶ 60–74.

1

1    Before Vue filed this case, however, the credit union refunded the allegedly duplicative
2  fees. *See* Account Statements at 24, 26, ECF No. 96-11.[1]  Those refunds might have mooted at
3  least some of her claims, but the credit union did not argue the case was moot.  As it turned out,
4  the credit union had charged Vue a third $30 fee that she did not mention in her complaint, and
5  that third fee was duplicative in the same sense as she alleged the other two were. *See id.* at 24.
6  Unlike the first two fees, moreover, the credit union did not refund the third fee until after Vue
7  had filed this case. *See id.* at 24, 32.  To complicate matters further, Vue's account statements
8  show the credit union issued a fourth $30 refund after this case was pending. *See id.* at 32.  The
9  fourth refund differs from the first three.  The credit union appears to have reversed a fee it was
10 entitled to charge, even under Vue's theory of the case. *See id.*

11   In any event, by August 2021, the credit union had paid Vue four $30 refunds worth $120
12 in total. *See id.* at 26, 32.  Her account balance was $67.03. *See id.*  A few months later, in
13 January 2022, her balance was $67.05, thanks to a small dividend. *See id.* at 32, 36.  She made a
14 $50 withdrawal, leaving a balance of $17.05. *See id.* at 36.  Subtracting the third and fourth
15 refunds described above—i.e., the two refunds not cited in the complaint, which both were issued
16 while this case was pending—would result in a negative balance.  For that reason, in the credit
17 union's retrospective assessment of her account history, Vue accepted and spent the one refund
18 that had kept her case alive. *See* Mem. at 3, ECF No. 96-1.

19   The credit union did not, however, move to dismiss the case for lack of subject matter
20 jurisdiction, at least not immediately.  It instead moved to dismiss for failure to state a claim, and
21 in 2023, the court granted that motion in part, dismissing all of Vue's claims but the first, for
22 breach of contract. *See generally* Order (Sept. 29, 2023), ECF No. 38.  The credit union then
23 filed its answer, ECF No. 39, and discovery began, *see generally* Sched. Order, ECF No. 43.

24   That summer, Vue stopped responding to her attorneys' calls and other attempts to contact
25 her, so they canceled her upcoming deposition. *See* Order (Oct. 4, 2024) at 13–14, ECF No. 66.
26 Her attorneys sought the assigned magistrate judge's permission to amend the complaint to assert

---

[1] To avoid confusion, this order refers to Bates-stamped page numbers when available, omitting prefixes and any leading zeros.

2

1   similar claims by three new credit union members.[2]  *See id.* at 2.  In opposition, the credit union
2   argued the assigned magistrate judge should not permit an amendment because the case had
3   become moot as a result of the refunds summarized above and by virtue of Vue's effective
4   abandonment of the case.  *See* Opp'n Mot. Sub. at 17–19, ECF No. 55.  The magistrate judge
5   disagreed that the refunds had mooted Vue's claims.  *See* Order (Oct. 4, 2024) at 6–9.  He
6   permitted the three new plaintiffs to substitute themselves in Vue's place.  *See id.*

7         The credit union asked this court to reconsider the magistrate judge's decision that the
8   case was not moot.  *See generally* Mot. Recons., ECF No. 71.  Separately, the credit union moved
9   to dismiss for lack of subject matter jurisdiction based on its argument that the complaint did not
10  include allegations showing more than $5 million was in dispute, as required by 28 U.S.C.
11  § 1332(d).  *See* Prev. Mot. Dismiss at 4–6, ECF No. 72.  This court agreed the complaint did not
12  include allegations supporting its generalized assertion that more than $5 million was in
13  controversy, which meant the court had no subject matter jurisdiction, so the amended complaint
14  was dismissed with leave to amend.  *See* Order (Dec. 5, 2024), ECF No. 92.  The court did not
15  reach the credit union's mootness argument, and denied the motion for reconsideration as moot.
16  *See generally id.*  Plaintiffs then filed the operative second amended complaint.  ECF No. 95.
17  They now assert a claim for breach of contract on behalf of two named plaintiffs—Denise Beyard
18  and Caroline Cardoza—who seek to represent a class of similarly situated credit union members.
19  *See generally id.*  Beyard's and Cardoza's contract claims are essentially the same as those Vue
20  asserted and rest on allegations about deductions to their own account balances.  *Compare, e.g.*,
21  Second Am. Compl. ¶¶ 34–40 *with* Compl. ¶¶ 13–18.

22        The credit union now moves again to dismiss, arguing the case is moot.  *See generally*
23  Mot. Dismiss, ECF No. 96; Mem., ECF No. 96-1.  The credit union does not argue Beyard's or
24  Cardoza's claims are moot; it argues once again that Vue's claims were moot as early as 2021,
25  because it refunded the fees it charged and changed its fee policies.  The court took the motion

---

[2] This and other similar pretrial matters were referred to the assigned Magistrate Judge under 28 U.S.C. § 636(b)(1)(A), Local Rule 302(c), and the standing orders of the previously assigned District Judge.

1   under submission without holding oral argument after briefing was complete. *See generally*
2   Opp'n, ECF No. 97; Reply, ECF No. 100; Min. Order, ECF No. 101.

3         Plaintiffs contend at the outset that the credit union's motion is, in effect, a second request
4   to revisit the magistrate judge's decision. *See* Opp'n at 5. They urge the court not to reconsider
5   unless the magistrate judge's decision was "clearly erroneous" or "contrary to law." *Id.* (quoting
6   28 U.S.C. § 636(b)(1)(A)). But the court need not dwell on the standard that would apply to a
7   motion for reconsideration. Mootness is a jurisdictional question this court must answer
8   independently at any stage. *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that
9   it lacks subject-matter jurisdiction, the court must dismiss the action."); *cf. Latch v. United States*,
10  842 F.2d 1031, 1032 (9th Cir. 1988) (per curiam) ("The issue of subject matter jurisdiction
11  presents a legal question, which we review de novo."). And because the relevant factual record is
12  undisputed, the court need not investigate whether the magistrate judge made factual errors.

13        The credit union's mootness arguments rest on the general rule that a class action must
14  "be dismissed for mootness when the personal claims of all named plaintiffs are satisfied and no
15  class has been properly certified." Mem. at 7 (quoting *Emps.-Teamsters Local Nos. 175 & 505*
16  *Pens. Tr. Fund v. Anchor Capital Advisors*, 498 F.3d 920, 924 (9th Cir. 2007)). When a named
17  plaintiff's claims are moot, "there is no longer a 'case or controversy' to be decided within the
18  meaning of Article III of the Constitution." *Emps.-Teamsters*, 498 F.3d at 924. In *Employees-*
19  *Teamsters*, for example, the plaintiff had dismissed the individual claims voluntarily before a
20  class was certified. *See id.* In this case, by contrast, there is a live controversy: the dispute
21  between Beyard and Cardoza, on the one hand, and the credit union on the other. Beyard and
22  Cardoza have not dismissed their claims, and no one suggests their claims have been satisfied.

23        The credit union argues that the case is moot because it satisfied the claims of their
24  predecessor, Panghnia Vue. The court will not dismiss this action simply because, in the credit
25  union's retrospective assessment of the record, it fully compensated the plaintiff whose name
26  appeared on the original complaint. The operative second amended complaint fully superseded
27  the original and amended complaints. *See Lacey v. Maricopa County*, 693 F.3d 896, 927 (9th Cir.
28  2012) (en banc). Federal courts often have held that amended complaints and supplemental

4

1   complaints can cure jurisdictional defects like those the credit union now cites.  *See, e.g.*,

2   *Northstar Fin. Advisors Inc. v. Schwab Invs.*, 779 F.3d 1036, 1043–48 (9th Cir. 2015); *Bates v.*

3   *Leprino Foods Co.*, No. 20-00700, 2022 WL 3371584, at *3 (E.D. Cal. Aug. 16, 2022).  Deciding

4   whether Vue's claims were moot would be a waste of time and resources—a pursuit of "needless

5   formality"—now that the present parties have a live dispute.  *Northstar*, 779 F.3d at 1043

6   (citation omitted).

7          The credit union's mootness argument also is unpersuasive on its own terms.  For several

8   years now, the Ninth Circuit has held that when a defendant fully satisfies a named plaintiff's

9   claims, that plaintiff can "continue to seek class certification" under the theory that the

10  defendant's litigation tactics rendered the named plaintiff's personal claims "inherently

11  transitory."  *Chen v. Allstate Ins. Co.*, 819 F.3d 1136, 1143, 1148–49 (9th Cir. 2016) (quoting

12  *Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1091 (9th Cir. 2011) (other citations and quotation

13  marks omitted).  "[R]equiring multiple plaintiffs to bring separate actions, which effectively

14  could be 'picked off' by a defendant's tender of judgment before an affirmative ruling on class

15  certification could be obtained, obviously would frustrate the objectives of class actions."  *Id.*

16  (quoting *Deposit Guar. Nat. Bank, Jackson, Miss. v. Roper*, 445 U.S. 326, 339 (1980)).  As

17  plaintiffs correctly point out, district courts within the Ninth Circuit have often relied on *Chen*

18  and *Pitts* when they have declined to dismiss class claims as moot in similar circumstances.  *See,*

19  *e.g.*, *T. K. v. Adobe Sys. Inc.*, No. 17-04595, 2018 WL 1812200, at *12 (N.D. Cal. Apr. 17, 2018);

20  *Davis v. United States*, No. 16-06258, 2017 WL 1862506, at *2–3 (N.D. Cal. May 9, 2017);

21  *Dioquino v. Sempris, LLC*, No. 10-5556, 2011 WL 13127143, at *4–5 (C.D. Cal. Dec. 8, 2011).

22         The credit union cites this court's decision in *Anderson v. Safe Streets USA, LLC* to argue

23  *Chen* and *Pitts* are not controlling.  *See* Reply at 8 (citing No. 18-0323, 2022 WL 17821702, at *4

24  (E.D. Cal. Dec. 20, 2022)).  In *Anderson*, the plaintiff who asked to represent a class had

25  previously agreed to arbitrate his individual claim, then resolved that claim in arbitration.  *See*

26  2022 WL 17821702, at *4.  The class claims were moot because the individual plaintiff's claims

27  were moot.  *See id.*  As in *Employees-Teamsters*, cited above, it was the plaintiff's own actions

28  and agreements that had mooted the case, not the defendants' attempts to satisfy the named

5

1    plaintiff's claims. *See id.*; *see also Emps.-Teamsters*, 498 F.3d at 914. That is why *Pitts* was not

2    controlling. *See* 2022 WL 17821702, at *5 ("[I]n some cases, plaintiffs have argued that

3    defendants have used mootness arguments strategically, in order to 'pick off' the named plaintiff

4    'to avoid a class action.' Anderson cannot rely on that argument." (quoting *Pitts*, 653 F.3d at

5    1091)). Vue, by contrast, did not agree to arbitrate, settle or dismiss her claims.

6        In reply, the credit union also relies on a theory of implied agreement or ratification. *See*

7    Reply at 5, 8. Vue did not impliedly settle her claims by withdrawing $50 from her account in

8    January 2022. At that time, she did not believe the credit union was attempting to satisfy her

9    legal claims by issuing refunds and, in fact, did not even know about the refunds until much later.

10   *See generally* Vue Decl., ECF No. 48. She cannot have ratified an implied agreement to settle her

11   claims if she did not know about the refunds. *See Lockwood v. Wolf Corp.*, 629 F.2d 603, 609

12   (9th Cir. 1980) ("[R]atification by silence or acquiescence requires knowledge, and acceptance of

13   the benefits from the contract or prejudicial reliance by the other party.").

14       In sum, there is a live controversy, and this case is not moot. The motion to dismiss for

15   lack of subject matter jurisdiction is denied.

16   **II.    VENUE**

17       The credit union also moves to dismiss this case for improper venue under Rule 12(b)(3).

18   Mem. at 11–15. In response, Beyard and Cardoza must show this district is a proper venue. *See*

19   *Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979). In

20   considering this question, the court may consider evidence outside the complaint, but it must

21   resolve any evidentiary conflicts in Beyard's and Cardoza's favor. *See Murphy v. Schneider*

22   *Nat'l, Inc.*, 362 F.3d 1133, 1137–38 (9th Cir. 2004).[3]

23       Venue "is generally governed by 28 U.S.C. § 1391." *Atl. Marine*, 571 U.S. at 55. Beyard

24   and Cardoza rely on § 1391(b)(2). Second Am. Compl. ¶ 26. Under that subsection, "[a] civil

---

[3] In *Murphy*, the Circuit was reviewing the district court's decision to enforce a forum selection clause in response to a motion under Rule 12(b)(3). *See* 362 F.3d at 1137. The Supreme Court later held a party may not attempt to enforce a forum selection clause by filing a 12(b)(3) motion. *See Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Tx.*, 571 U.S. 49, 55 (2013). The Supreme Court's decision does not, however, undermine the general rules, summarized above, which the circuit court applied in *Murphy*.

1  action may be brought" in any "district in which a substantial part of the events or omissions
2  giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2).  As the phrase "substantial part"
3  suggests, there may be more than one appropriate venue, and a plaintiff need not show that the
4  district in which she sues is the best venue or the one in which most of the relevant events
5  occurred.  *See, e.g.*, *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 356–57 (2d Cir. 2005) (collecting
6  authority); *Huddleston v. John Christner Trucking, LLC*, No. 17-00925, 2017 WL 4310348, at *6
7  (E.D. Cal. Sept. 28, 2017).

8      Beyard alleges she has lived within this district in Bakersfield, California, since April
9  2018, and she alleges she incurred at least some of the disputed fees in Bakersfield.  Second Am.
10 Compl. ¶ 26.  The credit union does not dispute that this district would be a proper venue if
11 Beyard truly lived in Bakersfield at the relevant time.  *See Decker Coal Co. v. Commonwealth*
12 *Edison Co.*, 805 F.2d 834, 842 (9th Cir. 1986) ("[V]enue for a claim based on breach of contract
13 [is] the place of intended performance.").  It argues instead that Beyard's residency allegation is
14 false, pointing to her Arizona driver's license.  *See* Mem. at 14.  In response, Beyard cites her
15 interrogatory responses and a declaration, which both confirm her Bakersfield residency.  *See*
16 Pls.' Resp. Interrog. No. 2, ECF No. 98-1; Beyard Decl. ¶ 2, ECF No. 99.  She acknowledges she
17 has an Arizona license, but she claims she also has a California license.  *Id.* ¶ 3.  According to her
18 declaration, she has family in Arizona and maintains part of her business in Arizona, and she
19 obtained an Arizona license because she "was considering moving to Arizona," but she did not
20 ultimately make the move.  *Id.*  As further evidence that Bakersfield is Beyard's home, her
21 counsel cites her agreement to attend a deposition in Bakersfield, Dosaj Decl. ¶ 2, ECF No. 98,
22 and her credit union account statements, which bear her Bakersfield address and show
23 transactions in Bakersfield in 2018, *see* Silvey Decl. Ex. B-4, ECF No. 55-29.  At this stage, the
24 court must resolve this factual dispute in Beyard's favor.  This district is a proper venue to
25 adjudicate Beyard's claim, if nothing else.

26     Cardoza, unlike Beyard, lives outside this district, in Sun City, California.  Second Am.
27 Compl. ¶ 6.  Plaintiffs do not argue this district is a proper venue based on Cardoza's claims and
28 residence.  They instead argue this district is a proper venue despite Cardoza's residence, *see*

7

1   Opp'n at 15–16, and they ask the court to exercise "pendent venue" over Cardoza's claims, *see id.*
2   at 16–18.

3   The Supreme Court and Ninth Circuit do not appear to have decided in precedential
4   opinions whether each plaintiff in a multi-plaintiff case must satisfy the relevant venue
5   requirements.  The available persuasive authority is conflicting.  District courts in multiple
6   circuits, including the Ninth Circuit, have held that each plaintiff—or in the case of a class action,
7   each named plaintiff—must show the district is a proper venue for the claims they assert.  *See,*
8   *e.g.*, *Stone #1 v. Annucci*, No. 20-1326, 2021 WL 4463033, at *13 (S.D.N.Y. Sept. 28, 2021);
9   *Abrams Shell v. Shell Oil Co.*, 165 F. Supp. 2d 1096, 1107 n.5 (C.D. Cal. 2001).  But courts and
10  treatises alike have recognized this is a "general rule" or one that applies "in most instances," not
11  all.  *E.g.*, *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1191 (N.D. Cal. 2017), *aff'd on other*
12  *grounds*,[4] 905 F.3d 1137 (9th Cir. 2018); *Huddleston, LLC*, 2017 WL 4310348, at *6; Wright &
13  Miller, 7A Fed. Prac. & Proc. Civ. § 1757 (4th ed.).

14   The question also is often complicated by the fact that different federal venue statutes
15  apply to different claims, and courts do not always consider or state clearly whether a particular
16  statute's terms played a role in the decision.  *Cf., e.g.*, *Saravia*, 280 F. Supp. 3d at 1191 (applying
17  § 1391(e), which applies to claims against federal officers and agencies, but citing cases applying
18  the special venue provisions for cases under Title VII of the Civil Rights Act of 1964).  At least
19  one district court within the Ninth Circuit has even expressly rejected the general rule, citing its
20  roots in decisions applying specialized venue statutes.  *See Armacost v. Depuy Synthes Sales, Inc.*,
21  No. 18-01331, 2018 WL 11471582, at *2 & n.1 (N.D. Cal. June 7, 2018).  Other courts applying
22  the default provisions in § 1391(b) also have permitted plaintiffs to remain in the case even
23  though they could not independently show the district was a proper venue for their claims,
24  without mentioning the "general rule" summarized above.  *See, e.g.*, *Rodriguez v. Cal. Hwy.*
25  *Patrol*, 89 F. Supp. 2d 1131, 1135–36 (N.D. Cal. 2000).

---

   [4] The plaintiffs whose claims were dismissed for improper venue in *Saravia* did not challenge that dismissal on appeal.  *See* 905 F.3d at 1141 n.5.

1	There is also another layer to the analysis. As Beyard and Cardoza point out, the "pendent venue" doctrine permits a district court to adjudicate claims that fall short of the venue requirements in § 1391(b) if other claims in the case do meet those requirements, provided that "doing so is justified by 'principles of judicial economy, convenience, avoidance of piecemeal litigation, and fairness to the litigants.'" *Unique v. Claybaugh*, 712 F. Supp. 3d 1265, 1272 (N.D. Cal. 2024) (quoting *Martensen v. Koch*, 942 F. Supp. 2d 983, 998 (N.D. Cal. 2013)); *see also Flamingo Indus.* (*USA*) *Ltd. v. U.S. Postal Serv.*, 302 F.3d 985, 997–98 (9th Cir. 2002) (recognizing this rule), *rev'd on other grounds*, 540 U.S. 736 (2004); *Beattie v. United States*, 756 F.2d 91, 101–02 (D.C. Cir. 1984). Courts rely on the pendent venue doctrine when the relevant claims are "closely related," *United Tactical Sys. LLC v. Real Action Paintball, Inc.*, 108 F. Supp. 3d 733, 753 (N.D. Cal. 2015), or "arise out of the same common nucleus of facts," *Flamingo*, 302 F.3d at 997. Beyards's and Cardoza's claims fit that description. Both allege they were members of the same credit union at about the same time and were charged the same fee, and they allege the fee violated their membership agreement for the same reasons. The credit union offers no persuasive reason to conclude otherwise. *See* Reply at 10. Splitting this case into two across at least two district courts would be wasteful of court resources.

	The parties have not cited any cases, controlling or persuasive, in which a court has put all of these various rules and elements together. That is, they do not cite any cases in which a court has decided whether the pendent venue doctrine permits the joinder of claims by a new plaintiff if the district would not otherwise be an appropriate venue for that new plaintiff's claim under the "general rule," which requires each named plaintiff to satisfy the requirements of § 1391. The court's own searches have not identified any directly relevant decisions, let alone a majority rule or apparent trend. *See*, *e.g., Saravia*, 280 F. Supp. 3d at 1191 (describing class action venue as a "separate and difficult question" from pendent venue); *Doe v. New York*, No. 10-1792, 2012 WL 4503409, at *2–5 (E.D.N.Y. Sept. 28, 2012) (applying pendent venue rules to claims by additional plaintiff).

	Given the absence of any controlling authority, the conflicting persuasive authority, the similarities between Cardoza's and Beyard's claims, and the evidence showing this district is a

9

proper venue for Beyard's claim, the court is loath to conclude that this District is an "improper venue" for Cardoza's claim under Rule 12(b)(3).  At the end of the day, 28 U.S.C. § 1391 requires only that "a substantial part" of the relevant "events or omissions" occurred within this District—without imposing any plaintiff-by-plaintiff requirements.  28 U.S.C. § 1391(b)(2).  In this respect, the district court's reasoning in *Armacost*, 2018 WL 11471582, at *2, is persuasive.  The motivations behind the court-created pendent-venue doctrine also favor a single action in this District.  Adjudicating both named plaintiffs' claims along with any certified class claims in one action is "justified by principles of judicial economy, convenience, avoidance of piecemeal litigation, and fairness to the litigants," *Unique*, 712 F. Supp. 3d at 1272 (citation and quotation marks omitted).  Dismissing or transferring Cardoza's claims would likely cause delays, confusion and duplicative litigation.

### III.   CONCLUSION

The motion to dismiss (ECF No. 96) is **denied**.  The answer is due **within fourteen days**. *See* Fed. R. Civ. P. 12(a)(4)(A).  All other pretrial scheduling and discovery matters, including the pending motion at ECF No. 77, remain under referral to the assigned magistrate judge.  *See* E.D. Cal. L.R. 302(c)(1), (13).

IT IS SO ORDERED.

DATED:  February 5, 2025.

_____
SENIOR UNITED STATES DISTRICT JUDGE